Gene H. EBERHART, Maxine M. Eberhart, Dale J. Sherk, Wilber Nettrour, Ottlie Nettrour, David M. Cook, Margarett E. Cook, Warren M. Milliken, Ethel E. Milliken, Orville D. Gilmer, Forest W. Hepler, Dale E. Mikel, Doris M. Mikel and Community Gospel Church, Inc., Plaintiffs-Appellants,

v.

INDIANA WASTE SYSTEMS, INC., Prairie View Farms, Inc., and St. Joseph County Commissioners, Defendants-Appellees.

No. 3–1281A309.

Court of Appeals of Indiana, Third District.

Aug. 25, 1983.

Rehearing Denied Nov. 18, 1983.

Lloyd M. Allen, Kenneth P. Fedder, Voor, Allen, Fedder, Herendeen & Kowals, South Bend, for plaintiffs-appellants.

John D. Bodine, Mishawaka, for defendants-appellees St. Joseph County Council and St. Joseph County Commissioners.

James F. Groves, Noell, Groves & White, South Bend, for defendants-appellees.

GARRARD, Judge.

This is an appeal from an action for declaratory judgment. On August 7, 1980, Indiana Waste Systems, Inc. and Prairie View Farms, Inc. filed a petition with the Area Board of Zoning Appeals (ABZA) of St. Joseph County. The petition sought a special use permit authorizing operation of a sanitary landfill on agriculturally zoned property. The ABZA denied the petition. They then asked for a rehearing which was also denied.

On October 8, 1980, the day rehearing was denied, proposed Ordinance No. APC 294–80 was filed with the St. Joseph County Council (Council). The Council referred the proposal to the Area Plan Commission (APC), which held a hearing on the ordinance and reported back to the Council. The Council then passed APC 294–80. On December 2, 1980 the St. Joseph Board of County Commissioners (Commissioners) approved APC 294–80.

APC 294–80 amended Zoning Ordinance No. 6, the 1961 enactment establishing the basic structure of land use regulation in St. Joseph County. APC 294–80 added a new category of land use, a "conditional use," to Zoning Ordinance No. 6. The new ordinance defined a conditional use as:

> "A use which, by its nature and potential impact upon adjacent property, a substantial portion of the entire county or the county as a whole, requires review and approval by the [St. Joseph County Council]; or a use which is an activity, service or facility traditionally provided by local government, but which may be provided by private business or industry through a contractual or franchise agreement with local government."

Sanitary landfills were listed as permissible conditional uses. Application for such a use could be made by "[a]ny person or organization" having an interest in land. The application would be referred to the County Health Officer and to the Area Plan Commission. If they did not disapprove, and if the applicant established that certain conditions were met, then the Council could approve the application by enacting an ordinance authorizing that specific conditional use.

Indiana Waste Systems, Inc. and Prairie View Farms, Inc. applied for a conditional use permit under APC 294–80. The application was for authorization to operate a landfill on the land which had been the subject of the August 7, 1980 petition to the ABZA. On February 24, 1981 the Council approved the application by passing Ordinance No. 12–81. The Commissioners approved Ordinance 12–81 on March 3, 1981.

The appellants in this action all own land in the vicinity of the landfill authorized by 12–81. On January 21, 1981 these landowners filed an action for declaratory judgment. They sought a declaration that APC 294–80 was "contrary to law, null and void." They later amended their complaint to seek a similar declaration for Ordinance 12–81. On June 30, 1981 the court entered an order finding for Indiana Waste Systems, Inc. and Prairie View Farms, Inc. and against the landowners. From that order the landowners appeal.

We have collapsed the five particular issues raised by the landowners into two general issues:

1. Are Ordinances APC 294–80 and 12–81 impermissible encroachments upon the ABZA's statutory authority to determine special land uses under Zoning Ordinance No. 6?

2. Was Ordinance 12–81 a collateral attack on the final decision of the ABZA denying Indiana Waste Systems, Inc. and Prairie View Farms, Inc. a special use permit?

## I.

We begin with the argument that Ordinances APC 294–80 and 12–81 are unlawful. The argument is as follows: By statute, the ABZA has exclusive power to grant exceptions to the land uses defined in Zoning Ordinance No. 6. A conditional use is an exception to these land uses. Therefore, only the ABZA can grant conditional uses. APC 294–80 empowers the Council and Commissioners to grant conditional uses.

12–81 granted a conditional use. Both the reservation of power in APC 294–80 and the exercise of that power in 12–81 conflict with the statutory grant of power to the ABZA. Therefore, APC 294–80 and 12–81 are unlawful.

The merit of the argument depends upon whether conditional use can be characterized as an exception reserved to the ABZA, and upon the statutory authority conferred, respectively, on the ABZA, the Council and the Commissioners. St. Joseph County operates under area planning law, introduced in 1957. Acts 1957, Ch. 138. A county adopting the 1957 scheme created an area planning department, composed of an area planning commission, a board of zoning appeals and a general staff. BURNS IND.STAT. ANN., Section 53–1003 (1964) [repealed].[1] The planning department prepared a comprehensive plan for county development. BURNS IND.STAT.ANN., Section 53–1035 to Section 53–1044 (1964) [repealed]. The Commissioners, as the legislative body,[2] then enacted an ordinance creating the structure for implementing the plan. BURNS IND.STAT.ANN., Sections 53–1045 to 53–1054 (1964) [repealed]. This was the genesis of Zoning Ordinance No. 6. Zoning Ordinance No. 6 established the organization for administering land use regulations in St. Joseph County, as well as defining county zoning districts and the uses permit-ted therein. Zoning Ordinance No. 6, Sections 5, 4, 6 and 7 (1961).

Under area planning as it has evolved in St. Joseph County since 1957, the Council, Commissioners and ABZA all have clearly differentiated powers and duties. As the executive power in the county, the Commissioners approve or veto ordinances passed by the Council. IC 17–1–28–3(n) (1980 Supp.). The Commissioners are also empowered to "[a]dminister all laws applicable to the county, and ordinances, policies and regulations thereof, to the extent such matters are not explicitly assigned to other elected officials." IC 17–1–28–3(e) (1980 Supp.). The Council functions as a legislative body, and has "the exclusive power to pass ... ordinances, orders, resolutions, and motions ... for the government of [the] county." IC 17–1–28–10(c) and (d) (1980 Supp.). The ABZA is appointed to hear appeals from the enforcement of the zoning ordinance, and to "hear and determine special exceptions to the terms of the zoning ordinance upon which the board of zoning appeals is required to act under the zoning ordinance."[3] IC 18–7–4–918(b); IC 18–7–4–902 (1980 Supp.). It has been held that the board of zoning appeals has the sole power to grant exceptions to, or variances from, a zoning ordinance. *Board of Zoning Appeals of the City of Mishawaka v. School*

---

1. Citation is to the original statute establishing area planning. Like other aspects of zoning law in Indiana, area planning has had a tortured statutory career. The original statute has passed through several versions, the most recent of which may be found at IC 36–7–4–100 to 36–7–4–1213 (1982). The incarnation extant when APC 294–80 was passed was IC 18–7–4–101 to 18–7–4–1213 (1980 Supp.). This is the statute which provides the primary source of authority in the discussion above.

2. Under the 1957 act, the board of county commissioners was the legislative body for the county. BURNS IND.STAT.ANN., Section 53–1002 (1964). More recently, the Commissioners are the executive authority of the county and the legislative body is the county council. Acts 1973, P.L. 163, Section 1; IC 17–1–28–3; IC 17–1–28–6 (1980 Supp.). *Cf.,* IC 18–7–4–108 (1980 Supp.). APC 294–80 included a provision defining "legislative body" as "the St. Joseph County Council." APC 294–80(A)(2).

3. Zoning Ordinance No. 6 empowers the ABZA to hear appeals from decisions of the County Building Commissioner and to "hear and decide all applications for variations from the terms provided in this ordinance." Section 5(C)(2). "Variations" are exceptions, or variances, as discussed above. Zoning Ordinance No. 6, Section 5(G) (1961). The ABZA is also authorized to "hear and decide all applications for special uses." Zoning Ordinance No. 6, Section 5(C)(2)(c) (1961). Special uses are defined as uses "which, because of their unique characteristics, cannot be properly classified in any particular district" without considering the use's impact upon adjoining property and the "public need for the particular use." Zoning Ordinance No. 6, Section 5(J) (1961). It was an application for such a use that the ABZA rejected on September 3, 1980.

*City of Mishawaka* (1957), 127 Ind.App. 683, 145 N.E.2d 302, 305.

The Council and Commissioners are authorized to amend the zoning ordinance. IC 18–7–4–607 to 18–7–4–611 (1980 Supp.); Zoning Ordinance No. 6 Section 5(1) (1961); *Krimendahl v. Common Council of City of Noblesville* (1971), 256 Ind. 191, 267 N.E.2d 547, 551; *State ex rel. Michigan City Planning Commission v. LaPorte Superior Court No. 1* (1973), 260 Ind. 587, 297 N.E.2d 814, 815. APC 294–80 was, of course, such an amendment.[4] Whether or not it was a valid amendment, and 12–81 a valid action under it, depends upon whether APC 294–80 usurped any of the statutory powers of the ABZA, or exceeded the statutory powers of the Council and Commissioners.

■ The planning statute grants the ABZA the power to "hear and determine special exceptions" to the zoning ordinance. IC 18–7–4–918(b) (1980 Supp.). "Special exceptions" are variances and special uses. IC 18–7–4–918(d) (1980 Supp.); Zoning Ordinance No. 6, Section 5(G), Section 5(J) (1961). A variance is a dispensation. Variances are granted to permit "a property owner to use his property in a manner forbidden by the zoning [ordinance]." 82 Am.Jur.2d, *Zoning and Planning*, Section 267. In exercising this discretion, the ABZA is guided by several statutory criteria, the most important of which is whether "the strict application of . . . the zoning ordinance will constitute an unusual and unnecessary hardship." IC 18–7–4–918(d)(4) (1980 Supp.); Zoning Ordinance No. 6, Section 5(G)(3)(a) (1961). If the

ABZA finds that such a hardship will result from a literal application of the ordinance, it can make an exception to the requirements of the ordinance.[5] 82 Am.Jur.2d, *Zoning and Planning* Section 255; IC 18–7–4–918(d) (1980 Supp.); Zoning Ordinance No. 6, Section 5(G)(1).

■ A conditional use is not a variance. *Tullo v. Twp. of Millburn* (1959), 54 N.J.Super. 483, 149 A.2d 620; A. Rothkopf & D. Rothkopf, 3 *The Law of Zoning and Planning*, Section 41.05[1] (1983), 82 Am. Jur.2d, *Zoning and Planning*, Section 255. The primary difference between the two is that a conditional use is not an exceptional use. Rothkopf, *supra,* at Section 41.05(a). A conditional use is a desirable use which is attended with detrimental effects which require that certain conditions be met before it can be established at a given location. *Id.* at Section 41.01. While a variance is a departure from the terms of an ordinance, a conditional use is a permitted use under the terms of the ordinance, so long as the enumerated conditions are met. 82 Am.Jur.2d, *Zoning and Planning*, Section 255. Therefore, conditional use grants cannot be encompassed within the ABZA's statutory authority to grant variances.

■ The ABZA also has authority to grant special use permits. *First Church of the Nazarene v. Weaver* (1972), 154 Ind. App. 157, 289 N.E.2d 155. This authority is part of the ABZA's power to grant exceptions to the terms of the zoning ordinance. 289 N.E.2d at 158–159, citing IC 18–7–5–82 (1971).[6] A special use, under Zoning Ordi-

---

**4.** The purpose for the amendment was described in APC 294–80 as:

"It is recognized that certain uses of property are of such a nature and potential impact upon adjacent property or the county as a whole, as to require review and approval by the Legislative Body of the county. It is further recognized, that classification of any such use as a permitted use within a zoning classification would, or could, deny the public the protection of review and approval of each such use by an elected legislative body. Therefore, it is the purpose and intent of this Ordinance to: designate certain uses of property as conditional uses; establish procedures for authorizing such conditional uses;·

specify those zoning districts in which specified conditional uses may exist."

**5.** It is noteworthy, however, that as to "area" planning the statute contains this proscription: "*Neither* the area board of zoning appeals, the county board of zoning appeals, nor the municipal board of zoning appeals may grant a variance from a *use district or classification.*" IC 18–7–4–918(d) (Our emphasis).

**6.** *Weaver* was construing Section 18–7–5–82 of advisory planning law. IC 18–7–5–1 to 18–7–5–99 (1976). The language regarding the authority of boards of zoning appeals is, however, essentially identical with that under area plan-

nance No. 6, is a use which "cannot be properly classified in any district . . . without consideration, in each case, of the impact . . . upon neighboring land." Zoning Ordinance No. 6, Section 5(J)(1); see also n. 3, supra. The ABZA is authorized to grant a special use permit if it finds:

"a. that the establishment, maintenance, or operation of the special use will not be detrimental to or endanger the public health, safety, morals, comfort, or general welfare;

b. that the special use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood;

c. that the establishment of the special use will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district;

d. that adequate utilities, access roads, drainage and/or necessary facilities have been or are being provided; and

e. that adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets."

Zoning Ordinance No. 6, Section 5(J)(6).

The landowners argue that a conditional use is simply a species of special use. From that premise they conclude that conditional uses are encompassed by the holding in *Weaver* that only the ABZA may grant special uses. 289 N.E.2d at 158–159. Therefore, they assert, APC 294–80's reservation of the power to grant conditional uses to the Council and Commissioners is unlawful under IC 18–7–4–918(b) as interpreted by *Weaver*.[7]

■■■ This argument would be correct if APC 294–80 involved special uses. It does not. APC 294–80 creates a new category. APC 294–80 begins by making the grant of

a conditional use contingent upon the Council's finding that:

"a. The establishment, maintenance and/or operation of the conditional use will not be detrimental to, or endanger, the public health, safety, comfort or general welfare;

b. Adequate utilities, access roads, drainage and/or necessary facilities have been, are being, or shall be provided;

c. Adequate measures have been, or will be taken to provide ingress to and egress from the site of the proposed conditional use so designed as to minimize traffic congestion;

d. Any potentially adverse impact of the conditional use upon adjacent property has been, or will be, eliminated or minimized to the extent reasonably and economically possible.

e. The granting of such conditional use is in the best interests of the residents of St. Joseph County."

APC 294–80 Section F(3).

While there are some similarities between these findings and those required for special uses, a subsequent section of APC 294–80 imposes additional requirements for the grant of a conditional use:

"a. The following uses shall be permitted as conditional uses of property upon approval by the Legislative Body as provided in Section 5(K) of this Ordinance: Sanitary Landfill, Solid or Liquid Waste Disposal Facility.

b. No sanitary landfill, or solid or liquid waste disposal facility, shall be approved as a conditional use which does not meet the following minimum standards in addition to whatever additional requirements may be required by Section 5–K–(3) of this ordinance or by the Legislative Body:

---

ning. IC 18–7–4–918(b)(2) (1980 Supp.); IC 18–7–5–82(3) (1976). The provision construed in *Weaver* has since been incorporated into a generic provision establishing the powers of boards of zoning appeals under area planning

law, advisory planning law and the new metropolitan planning law. IC 36–7–4–918 (1982); see also IC 18–7–4–918 (1980 Supp.).

**7.** See n. 6, supra.

1. No such conditional use shall be operated on a site of less than forty (40) acres.

2. No portion of such site within fifty (50) feet from adjacent property lines shall be utilized for such conditional use; provided, however, that where a residential district or principal residential use shares contiguous boundaries with the site of the conditional use at the time such conditional use is approved by the Legislative Body, no portion of such site within one hundred (100) feet of the boundary lines of such residential district or the property lines of such principal residential use shall be utilized for such conditional use.

3. Drainage plans for such conditional use and the proposed site thereof shall have been approved by the County Engineer and the County Surveyor, and curb cuts within and upon such proposed site shall have been approved by the County Engineer.

4. No sanitary landfill, or solid or liquid waste disposal facility, shall be approved as a conditional use which does not also qualify as an urban drain as herein defined.

5. No sanitary landfill, or solid or liquid waste disposal facility shall be approved as a conditional use until the applicant therefore [sic] and the owner of the proposed site therefore [sic] shall execute an agreement in favor of St. Joseph County by the terms of which such applicant and owner shall agree to maintain the site while being utilized for the conditional use, and to restore and reclaim the site within a time period specified in such agreement, following termination of such use, according to the following minimum specifications:

a. A uniform contour which blends in with the topography of the sur-rounding area shall be established and maintained throughout the area;

b. Impervious soil and soil suitable for growing vegetation, shall be replaced over the site to permanent uniform depths not less than that then required by applicable State standards and regulations;

c. The site shall be seeded, landscaped, and maintained with perennial plant material until a permanent type ground cover is established to prevent erosion."

APC 294–80 Section J.

■ The provisions of APC 294–80 Section J were added as amendments to Section 7 of Zoning Ordinance No. 6. Specifically, they were added as sub-section 7–B–3. Section 7(B) is the zoning district regulation for agricultural land. Parts 1 and 2 of 7(B) permit certain routine and special uses of agricultural land.[8] APC 294–80 adds conditional use, as a landfill or waste disposal facility, to these uses. *Weaver* held that the Council and Commissioners may not grant existing uses reserved to the ABZA's authority. 289 N.E.2d at 158–159. The ordinance at issue in *Weaver* was illegitimate because it merely granted a special use. *Id.* at 157, 158–159. The *Weaver* court noted, in dicta, that it was a legitimate act for the Council and Commissioners to rezone, or reclassify land. *Id.* at 159. That is what APC 294–80 does. Therefore, APC 294–80 is not void under *Weaver.*

The basis of *Weaver*'s holding, and of the landowner's argument, is the language of IC 18–7–4–918(b) that the board of zoning appeals shall "hear and determine special exceptions to the terms of the zoning ordinance *upon which the board of zoning appeals is required to act under the zoning ordinance.*" IC 18–7–4–918(b) (1980 Supp.) (our emphasis). Under Zoning Ordinance No. 6, variances[9] and special uses are such

---

**8.** Among the permitted uses are agricultural uses, use as religious institutions, cemeteries, golf courses and parks and recreation areas. Among the special uses are use as airports, community centers, hospitals and schools. Zoning Ordinance No. 6 Section 7(B)(1) and (2).

**9.** Actually, Zoning Ordinance No. 6 refers to "variations." Zoning Ordinance No. 6 Section 5(G). This is an older term than variance.

exceptions. Zoning Ordinance No. 6, Section 5(G), Section 5(J). But under Zoning Ordinance No. 6 as amended by APC 294–80 conditional uses are not such exceptions. APC 294–80 explicitly reserves the power to grant conditional use to the Council and Commissioners. There is no grant of power over conditional uses to the ABZA. Therefore, a conditional use is not a use "upon which the board of zoning appeals is required to act under the zoning ordinance." IC 18–7–4–918(b) (1980 Supp.).

█ If conditional use is not an exception upon which the ABZA is authorized to act, then what is it? There are two logical possibilities: It is not an exception, or it is an exception over which the ABZA has no authority. We find it to be the latter.[10]

█ We demonstrated earlier that a conditional use is not a variance or a special use. But conditional uses share one thing with variances and special uses: All three are granted at the discretion of a given authority. Permitted uses are far less discretionary: The primary requirement for securing authorization for a permitted use is showing that the use is one permitted under the ordinance. A. Rothkopf & D. Rothkopf, 4 *The Law of Zoning and Planning* Section 49.02[1]; 49.04; 49.05. Discretion is minimal since there has been a general determination that the use in question is appropriate in that location. *Id.* at Section 49.02[1]; 49.04. The board of zoning appeals is given discretion to allow variances and special uses upon a showing of hardship or of prescribed requirements. This delegation of discretion to boards of zoning appeals is common practice in zoning law. 82 AM.JUR.2D, *Zoning and Planning,* Section 267.

It is less common for legislative bodies to retain such discretion. 82 AM.JUR.2D, *Zoning*

and *Planning,* Sections 60–61. We find, however, that Indiana has provided statutory authorization for the retention of discretion in APC 294–80, and for the exercise of that discretion in 12–81.

There is statutory support for the characterization of conditional use under APC 294–80 as an exception to the zoning ordinance which the ABZA is not authorized to grant. IC 17–2–22–4 (1980 Supp.) provides that the "board of commissioners of any county, in addition to its other powers, may adopt ordinances regulating the public disposal of garbage and rubbish on any land which is situated outside the corporate limits of any city or town." APC 294–80 provided that there are three uses which may be approved as conditional uses: "Sanitary landfill, solid or liquid waste disposal facility." APC 294–80 Section J. All three are defined as methods for garbage and refuse disposal. APC 294–80 Section A.

Both APC 294–80 and 12–81 are ordinances regulating garbage disposal in St. Joseph County. APC 294–80 creates a mechanism for approving waste disposal sites in the county, and 12–81 was such an approval. This court has already held that an ordinance requiring the Commissioners' approval of landfill sites is a valid regulation under IC 17–2–22–4 (1980 Supp.). *Indiana Waste Systems, Inc. v. Board of Commissioners of Howard County* (1979), 180 Ind.App. 385, 389 N.E.2d at 52, 58–60. APC 294–80 and 12–81 effect the same result as did the ordinance in *Indiana Waste Systems:* they leave final approval of waste disposal in the county with the Commissioners.

█ *Indiana Waste Systems* held that requiring the Commissioners' approval of landfill sites did not encroach upon the authority of the ABZA. 389 N.E.2d at 58–

Rothkopf, *supra,* at Section 41.04. The more recent "variance" is used in the discussion to refer to Zoning Ordinance No. 6's "variation."

**10.** It is possible to grant conditional use by rezoning. The zoning ordinance is, in effect, amended by a series of discrete ordinances, each of which grants a new permit for a conditional use. Rothkopf, *supra,* at Section 41.-

05[2]. 289 N.E.2d at 159. One can construe APC 294–80 as the enabling legislation which allows the Council and Commissioners to rezone land by enacting ordinances such as 12–81. Though a logical possibility, we find this construction a tenuous one, and discard it in favor of the analysis above, which we find more compelling.

60. APC 294–80 and 12–81 are analogous to the approval ordinance at issue in *Indiana Waste Systems.* 389 N.E.2d at 53. They allow the Council and Commissioners to retain control over decisions concerning waste disposal. APC 294–80 was enacted, specifically, to permit review of such decisions by a legislative body. *See* n. 4, *supra.* Such review is within the authority granted by IC 17–2–22–4 (1980 Supp.). And it has been held that the word "regulate" in a statute permits the imposition of conditions upon the activity to be regulated. *Gordon v. City of Indianapolis* (1932), 204 Ind. 79, 83, 183 N.E. 124. APC 294–80 regulates waste disposal in St. Joseph County by requiring that certain conditions be met before the Council and Commissioners will approve use of county land for such a purpose. This is a valid regulatory ordinance under IC 17–2–22–4 (1980 Supp.). And, as an exercise of that regulatory power, ordinance 12–81 is also valid.

## II.

We are left, then, to consider the landowners' argument that ordinance 12–81 was an impermissible collateral attack upon the ABZA's decision denying Indiana Waste Systems, Inc. and Prairie View Farms, Inc. a special use permit. We conclude it was not.

In enacting APC 294–80 the Council and Commissioners were engaged in legislative action and were therefore not bound by res judicata. *Stokes v. City of Mishawaka* (1982), Ind.App., 441 N.E.2d 24. In adopting the ordinance, as we have herein determined, it created a new land use classification to be approved upon different factors than those applicable to contingent uses. The doctrine of collateral estoppel, to the extent it is available in administrative proceedings, had no application to the subsequent adoption of ordinance 12–81 which concerned determination of a conditional use upon the bases established by APC 294–80.

Affirmed.

HOFFMAN, P.J., and STATON, J., concur.