James **BROWN** and Rhonda Brown, Norman Belicek and Sharon Belicek, Appellants–Plaintiffs,

v.

**LOWELL MINING CO., INC.;** Kirk A. Pinkerton, Trustee of Pinkerton Trust; Lake County Plan Commission; Lake County Council; Stonehenge Mining Co., Inc.; William Critser; Henrik Perry Taubman and Adina Taubman, Trustees of the Charles Taubman Trust QCD # 259 12–18–87; U.S. Trust of New York, Appellees–Defendants.

No. 45A03–9304–CV–133.

Court of Appeals of Indiana, Third District.

June 20, 1994.

Rehearing Denied Sept. 9, 1994.

Brian J. Hurley, Douglas, Alexa, Koeppen & Hurley, Valparaiso, for appellants.

Kenneth D. Reed, Abrahamson, Reed & Adley, Hammond, Nick J. Thiros, Cohen & Thiros, Merrillville, for appellees Kirk A. Pinkerton, Trustee and Lowell Min. Co.

Gerald M. Bishop, Greco, Pera, & Bishop, Joseph S. Irak, Merrillville, for appellees Lake County Council and Lake County Plan Commission.

David Nicholls, Crown Point, for appellees William Critser; Henrik Perry Taubman and Adina Taubman, Trustees of Charles Taubman Trust QCD # 259 12–18–87; U.S. Trust of New York.

HOFFMAN, Judge.

Appellants-plaintiffs James and Rhonda Brown and Norman and Sharon Belicek (collectively "home owners") appeal from a summary judgment granted in favor of appellees-defendants Kirk A. Pinkerton, owner of Lowell Mining Co., Inc., (Lowell Mining) and trustee of Pinkerton Trust; William Critser, owner of Stonehenge Mining Co., Inc., aka/Northern Indiana Materials (NIM); Henrik Perry Taubman and Adina Taubman, owners of the land on which NIM is located and trustees of the Charles Taubman Trust (collectively all of the above appellees are referred to as "quarry owners"); the Lake County Plan Commission (Plan Commission) and the Lake County Council (County Council).

The facts relevant to this appeal disclose that the quarry owners own land located in an unincorporated area of Lake County, Indiana, which is rich in mineral deposits of dolomite limestone. The property on which NIM is located, owned by the Taubmans, was a former dolomite quarrying operation which had lain dormant for over twenty years prior to this dispute. The home owners own single family residential real estate near to the quarry owners' properties.

In May 1991, Pinkerton, on behalf of Lowell Mining and Critser, and the Taubmans for NIM petitioned the Plan Commission to have their properties rezoned so that quarries could be established and operated on them. At the time of the request, the subject lands were classified as A–1 Agricultural, zoned primarily for residential and farming use. The desired change was to "C.D.D. Conditional Development District," the only zoning classification under the Lake County Ordinance allowing quarries as a permitted use.

On May 21, 1991 after conducting a public hearing, the Plan Commission adopted an ordinance recommending the zoning change. The recommendation was then forwarded to the County Council. After 90 days of inaction, the ordinance became effective by operation of law.

See IND.CODE § 36–7–4–607 (1988 Ed.);

IND.CODE § 36–7–4–608 (1988 Ed.).

The ordinance granting the zoning change was adopted with a series of regulations attached to it.

In September 1991, the home owners commenced this action in the Lake Circuit Court by filing a petition for writ of certiorari asking the court to judicially review the actions of the Plan Commission and County Council, a claim for nuisance, and a request for declaratory judgment. In October 1991, the trial court granted the home owners' request for certiorari to review the decision of the County Council. In March 1992, the home owners then asked for an injunction to prevent any mining on the quarry properties. The trial court denied this request.

Subsequently, the parties filed motions for summary judgment. After conducting a hearing on the respective motions, the trial court granted summary judgment in favor of the quarry owners and the County Council and denied the home owners' motion. This appeal ensued.

The sole issue on appeal is whether summary judgment granted in favor of the quarry owners and the County Council and against the home owners was in error.

The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Chambers v. American Trans Air, Inc.* (1991), Ind.App., 577 N.E.2d 612, 614, *trans. denied.* Our standard of review is the same as that used by the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter desig-

nated to the trial court. Ind.Trial Rule 56(C).

On appeal, the home owners contend *inter alia* the actions of the Plan Commission in recommending and the County Council in granting the zoning change illegally usurped the powers of the Board of Zoning Appeals (BZA). More specifically, they contend the Plan Commission and County Council did not rezone the subject lands but rather granted the quarry owners a conditional use on agricultural land, a power statutorily reserved to the BZA pursuant to IND.CODE § 36–7–4–918.2(4) (1988 Ed.).

For their respective positions, the parties rely on *Eberhart v. Indiana Waste Systems, Inc.* (1983), Ind.App., 452 N.E.2d 455. In *Eberhart*, this Court, acting under the former statute (IND.CODE § 36–7–4–918 (1980 Supp.) (recodified as IND.CODE § 36–7–4–918.2 (1988 Ed.)) held that a conditional use could not be encompassed within the Board of Zoning Appeals' statutory authority to grant variances, special exceptions, and special uses. *Id.* at 459. However, as the home owners correctly point out, subsequent amendments to IND.CODE § 36–7–4–918.2 make the above holding in *Eberhart* inapplicable to the present dispute.

IND.CODE § 36–7–4–918.2 now provides that a board of zoning appeals has authority to "approve or deny all: ... (4) conditional uses; from the terms of the zoning ordinance...." Ind.Code § 36–7–4–918.2(4). Although the board of zoning appeals does have such authority to grant conditional uses, this authority is not absolute. Rather, the board's authority is limited to "[o]nly [those] classes of cases or in the particular situations specified in the zoning ordinance." IND. CODE § 36–7–4–918.2.

The relief requested by the quarry owners was to have their lands rezoned from "A–1 Agricultural" to "C.D.D. Conditional Developmental District." They did not seek a conditional use to establish quarries on their properties which at that time were zoned under the "A–1 Agricultural" classification. There is no dispute that the proper rezoning procedure was followed. Further, within the ordinance itself, the action was referred to as a rezoning. To this extent, the relief recom-mended by the Plan Commission and adopted by the County Council was a reclassification of zoning, not a granting of a conditional use. In rezoning the property, the County Council acted well within its authority and did not illegally usurp the statutory powers of the BZA. *Cf. First Church et al. v. Weaver et al.* (1972), 154 Ind.App. 157, 164, 289 N.E.2d 155, 159 (because the ordinance purporting to be an amendment to the zoning ordinance did not zone or rezone any property or reclassify any land but merely granted a special use, such action was an unlawful encroachment upon the statutory powers of the BZA to grant a special use).

To further support their argument that the County Council illegally granted a conditional use rather than rezoned the subject properties, the home owners rely on the list of regulatory conditions attached to the reclassification. However, as the County Council states in its appellate brief, IND. CODE § 36–7–4–601(d) (1988 Ed.) provides that a legislative body [County Council] has the authority to "(1) [e]stablish ... districts ..." and to "(2) ... regulate how real property [within each district] is developed, maintained, and used." IND.CODE § 36–7–4–601(d)(1) and (2)(A–J). Such regulation may include:

"(A) requirements for the area of front, rear, and side yards, courts, other open spaces and total lot area;

(B) requirements for site conditions, signs, and nonstructural improvements, such as parking lots, ponds, fills, landscaping, and utilities;

(C) provisions for the treatment of uses, structures, or conditions that are in existence when the zoning ordinance takes effect;

(D) restrictions on development in areas prone to flooding;

(E) requirements to protect the historic and architectural heritage of the community;

(F) requirements for structures, such as location, height, area, bulk, and floor space;

(G) restrictions on the kind and intensity of uses;

(H) performance standards for the emission of noises, gases, heat, vibration, or particulate matter into the air or ground or across lot lines;

(I) standards for population density and traffic circulation; and

(J) any other provisions that are necessary to implement the purposes of the zoning ordinance."

IND.CODE § 36–7–4–601(d)(2). A review of the attached regulations discloses they included provisions for road and drainage easements and improvements. They also addressed requirements for site conditions including a provision that all equipment be stored inside buildings when not in use and a provision that all trucks be covered with tarps. Further, the regulations listed certain required measures to prevent environmental hazards: the construction of 25–feet high landscape berms as buffers and six-feet high cyclone fences, the establishment of settling and drainage ponds, guarantees for surrounding wells, the adoption of policies to ensure against any adverse effects on ground water, the monitoring of air pollution and seismic activity, and regulation of blasting activities. We agree with the Plan Commission and County Council that these requirements were invoked merely to ensure the quarry owners' compliance with the district's purposes, that is, to "protect the public health, safety, comfort, and general welfare as concerns uses that have a serious impact on the environment and on neighboring properties...." *See e.g.* IND.CODE § 36–7–4–601(c)(3) (allowing legislative bodies to create ordinances to "promot[e] the public health, safety, comfort, morals, convenience, and general welfare"). As such, these attached requirements were a valid exercise of the County Council's authority to regulate pursuant to IND.CODE § 36–7–4–601(d)(1) and (2)(A–J), and they did not serve to create a conditional use as the home owners contend.

■ The quarry owners claim it is irrelevant whether the Plan Commission and County Council's actions illegally usurped the authority of the BZA to grant conditional uses. They argue their request to reclassify their properties was superfluous in light of IND.CODE § 36–7–4–1103 (1990 Supp.).

IND.CODE § 36–7–4–1103 prohibits an ordinance which would "prevent, outside of *urban areas,* the complete use and alienation of any mineral resourses ... by the owner or alienee of them." (Emphasis added) IND. CODE § 36–7–4–1103. IND.CODE § 36–7–4–1103(b) defines "urban areas" as including:

"all lands and lots within the corporate boundaries of a municipality, any other lands or lots used for residential purposes where there are at least eight (8) residences within any quarter mile square area, and other lands or lots that have been or are planned for residential areas contiguous to the municipality."

(Emphasis added.) There is no dispute that the properties upon which the quarries are located are in an unincorporated section of Lake County. Also, it is undisputed that these properties are not located on land which Lake County has planned for residential areas contingent to a municipality. At issue, however, is whether such properties are located on land "where there are at least eight (8) residences within any quarter mile square area...." IND.CODE § 36–7–4–1103(b).

A review of the designated evidentiary matter discloses that the focus of the parties seems to be whether any of the home owners' residential lands lie within a quarter mile of the boundaries of the quarry owners' properties or whether there are at least eight residences located on these properties. However, in determining where an "urban area" lies, the boundaries of the subject properties and the number of residences located therein are irrelevant to the analysis. *Bd. of Comm'rs v. King et al.* (1974), 160 Ind.App. 152, 159–160, 310 N.E.2d 560, 565. It is only *after* an established "urban area" has been defined, that the position of these properties becomes relevant. *Id.* Nothing in the designated evidence establishes that an urban area, as contemplated by IND. CODE § 36–7–4–1103(b), has been located or legally described.

Upon remand, the trial court must first locate and legally describe the relevant urban

areas. Once established, it must then determine whether any portion of the quarry owners' properties falls within such urban areas. Only that portion of the quarry properties falling within the established urban areas is subject to regulation by Lake County. *Bd. of Zoning Appeals v. Heyde et al.* (1974), 160 Ind.App. 165, 171, 310 N.E.2d 908, 912. However, any portion of the lands falling outside the urban areas is not subject to regulation under IND.CODE § 36–7–4–1103(b). *Id.* (inclusion of small portion of land within "urban area" does not render entire quarry operation within "urban area").

The trial court properly granted summary judgment in favor of the quarry owners and the Plan Commission and County Council on the issue of whether the County Council's actions illegally usurped the authority of the BZA to grant conditional uses. However, a material issue of fact still exists as to whether the quarry owners' properties are located within "urban areas" so as to subject them to regulation by the Lake County Ordinance.

Affirmed in part, reversed in part, and remanded with instructions consistent with this opinion.

GARRARD and BAKER, JJ., concur.