**CITY OF NEW HAVEN, Indiana, Appellant,**

v.

**CHEMICAL WASTE MANAGEMENT OF INDIANA, L.L.C., Chemical Waste Management, Inc., and WMX Technologies, Inc., Appellees.**

**No. 02A03-9606-CV-203.**

Court of Appeals of Indiana.

Nov. 18, 1998.

See also, 685 N.E.2d 97, and 694 N.E.2d 306.

James P. Fenton, Alan Verplanck, Eilbacher Scott, P.C., Fort Wayne, Cathleen M. Shrader, Barrett & McNagny, Fort Wayne, for Appellant.

George M. Plews, Timothy J. Paris, Plews Shadley Racher & Braun, Indianapolis, for Appellees.

## OPINION

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Intervening Plaintiff, the City of New Haven, Indiana ("City"), brings this consolidated appeal of four trial court decisions pursuant to two lower court cause numbers (02C01–9506–CP–642 & 02C01–9506–CP–764) concerning the operation and existence of a landfill, owned and operated by Chemical Waste Management of Indiana, L.L.C. ("CWMI"). The four trial court decisions at issue in this case are: 1) the denial of City's motion for summary judgment on six counts alleging CWMI's violation of several stop work orders and notices of violation (CP–642); 2) the court decision partially

granting and partially denying CWMI's motion for summary judgment (CP–642); 3) the court decision partially granting and partially denying CWMI's motion to vacate the Allen County Superior Court's November 27, 1995 order (CP–764); 4) the court decision partially reversing the Allen County Board of Zoning Appeals ("BZA") decision (CP–764). As cross-appellants, Chemical Waste Management of Indiana, L.L.C., Chemical Waste Management, Inc., Waste Management, Inc., and WMX Technologies, Inc. (collectively "CWMI") raise several procedural errors committed by the BZA and not corrected by the trial court as well as several procedural and substantive errors made by the trial court.

We affirm.

## ISSUES

The City raises several issues for our review which we consolidate and restate as follows:

1. Whether the trial court erred in ruling that the BZA offended CWMI's constitutional due process rights by imposing the burden of proof on CWMI to disprove the Zoning Administrator's allegations contained in the stop work orders and notices of violation.

2. Whether the trial court erred in finding that a stop work order issued against CWMI was invalid and unenforceable based on vagueness grounds.

CWMI raises several issues on cross-appeal, which we consolidate and restate as:

1. Whether the City's appeal is moot and should be dismissed because this court has already ruled that the trial court did not err in the entry of the agreed judgment.[1]

2. Whether the BZA applied the correct standard to review CWMI's appeal of the Zoning Administrator's orders.

3. Whether the trial court erred in denying CWMI summary judgment on the issues of institutional bias of the BZA and personal bias of a BZA member.

4. Whether the trial court abused its discretion in permitting the City to intervene permissively in CP–642 and in holding that CWMI was "conditionally" in violation of the stop work orders.

5. Whether the trial court erred in failing to give res judicata or collateral estoppel effect to the judgment in CP–308 denying the City's application for a temporary restraining order against CWMI.

6. Whether the trial court erred in failing to enter summary judgment for CWMI finding that there was not sufficient factual information to determine whether the landfill constituted a "structure" as a matter of law pursuant to the Allen County Zoning Ordinance ("ACZO"), and in failing to enter summary judgment for CWMI that the 1974 covenants were ultra vires, void ab initio, or otherwise unenforceable as a matter of law.

## FACTS AND PROCEDURAL HISTORY

On June 22, 1974, the ACZO was amended to include sanitary landfills as a permitted use in the district of the original site of CWMI's landfill. CWMI's predecessor in interest and then owner of the original site, Amon Brooks (Brooks), applied for a landfill permit. The Allen County Zoning Administrator refused to issue the permit and Brooks appealed at a BZA hearing. On September 17, 1974, the BZA reversed the Zoning Administrator's decision and ordered the Zoning Administrator to issue the permits to Brooks. Together with the BZA decision, Brooks agreed to a set of restrictions on his use of the property, recorded as restrictive covenants. CWMI acquired ownership of the original site on July 2, 1981.

A simplified version of the ensuing complex procedural background was set forth in *City of New Haven v. Chemical Waste Management of Indiana, L.L.C.*, 685 N.E.2d 97 (Ind.Ct.App.1997), *trans. dismissed:*

### CP–308

The parties' relevant involvement with one another began on February 23, 1993,

---

**1.** *See City of New Haven v. Allen County Board of Zoning Appeals,* 694 N.E.2d 306 (Ind.Ct.App. 1998).

when the City filed its 'Complaint to Enforce Zoning Ordinance and for Declaratory Relief' naming the Allen County Board of Zoning Appeals ("BZA") and CWMI as defendants. The City alleged that CWMI was operating its landfill facility in violation of the Allen County Zoning Ordinance and sought a court order for CWMI to cease operations. During the pendency of the City's zoning enforcement proceedings ('CP–308') [Allen Superior Court Cause No. 02D01–9302–CP–308], and in response to the trial court's initial orders in CP–308, the Allen County Zoning Administrator served several 'stop work orders' on CWMI, after which time CWMI [filed a cross-claim against the BZA and] moved to join the Zoning Administrator as a party [defendant] to the City's zoning enforcement case. In addition to issuing several stop work orders, the Zoning Administrator filed its counterclaim and an application for injunctive relief against CWMI. All parties moved for summary judgment in CP–308. The trial court issued its findings, conclusions, and order granting in part and denying in part CWMI's motion for summary judgment. The relevant portion of the trial court's order stayed all further proceedings 'pending CWMI's exhaustion of administrative remedies before any administrative agencies having primary jurisdiction over CWMI's land use.'

## CP–764

Accordingly, CWMI initiated an appeal to the BZA challenging, among other things, the Zoning Administrator's stop work orders. During the pendency of the BZA appeal, the Zoning Administrator issued additional stop work orders, as well as two notices of violation. On April 12 and 24, 1995, the BZA heard CWMI's appeal of the Zoning Administrator's stop work orders and notices of violation. The City appeared at the BZA hearings and urged the BZA to affirm all of the Zoning Administrator's orders. The BZA issued its decisions on May 10, 1995, affirming some of the Zoning Administrator's orders and reversing others.

On June 1, 1995, CWMI filed a petition for writ of certiorari in the trial court challenging those BZA determinations which were adverse to CWMI ('CP–764') [Allen Circuit Court Cause No. 02C01–9506–CP–764]. The City filed its appearance in the certiorari case as a remonstrator. On February 6, 1996, the trial court issued numerous orders which affirmed in part and reversed in part the findings of the BZA. The trial court certified its decision as a final appealable order pursuant to Trial Rule 54(B). Thereafter, the BZA, the Zoning Administrator, and the City initiated [this] appeal of CP–764.

## CP–642

During the pendency of the CP–764 certiorari case before the trial court, the BZA filed a verified complaint for injunctive relief, damages, and attorney fees, seeking to enforce those orders of the Zoning Administrator which the BZA had affirmed and which were adverse to CWMI ('CP–642') [Allen Circuit Court Cause No. 02C01–9506–CP–642]. The BZA also sought penalties against CWMI under the Allen County Zoning Ordinance. The City filed a petition to intervene as a plaintiff in the BZA's enforcement action. The trial court granted the City's petition and joined the City as a permissive intervening party in CP–642.

The parties moved for summary judgment in CP–642. On February 6, 1996, at the same time the trial court issued its ruling in CP–764, the trial court [Paul R. Cherry, Special Judge] also issued its ruling in CP–642, granting in part and denying in part CWMI's motion for summary judgment. The BZA, the Zoning Administrator, and the City filed a joint praecipe for appeal of CP–642, [which is this appeal].

## Agreed Judgment

On July 19, 1996, the BZA, the Zoning Administrator, and CWMI reached a settlement agreement and subsequently filed motions in CP–308, CP–764 and CP–642 requesting the trial court to enter an agreed judgment in each case. The trial

court entered an agreed judgment in each case dismissing all claims with prejudice. The City was not a party to the agreed judgment.

*Id.* at 99–100.

As a result of the agreement reached between those parties, the BZA and the Zoning Administrator dismissed their appeal of CP–642 and CP–764. The City, now the sole appellant, brings this consolidated appeal of the trial court's rulings in CP–642 and CP–764 while CWMI also brings several issues on appeal as cross-appellant.

## DISCUSSION AND DECISION

We will address the City's issues first.

### I. *Burden of Proof*

The City argues that the trial court erred in ruling that the BZA violated constitutional due process when it imposed upon CWMI the burden of proof and the burden of going forward on CWMI's appeal to the BZA of stop work orders issued by the Zoning Administrator. Specifically, the City contends that given the informal nature of BZA hearings, the strict rules as to burden of proof which are imposed in judicial proceedings have no application. We disagree.

■ The various stop work orders and notices of violation issued by the Zoning Administrator were allegations of violations by CWMI of the ACZO rather than a matter of CWMI seeking a permit, variance, or a special exception. In order to sustain a suit for injunctive relief concerning a violation of a zoning ordinance against the landowners, the moving party must first prove the existence of an applicable ordinance and a violation of that ordinance. *Hannon v. Metropolitan Development Comm'n of Marion County,* 685 N.E.2d 1075, 1078 (Ind.Ct.App.1997). The BZA failed to carry this initial burden of proof. We must agree with the trial court's finding that at the April 24, 1995 BZA hearing session, CWMI was improperly required to go forward first and bear the burden of proving that it was not in violation of the zoning ordinance. Instead, the burden of proof and the burden of going forward should have been on the Zoning Administrator to establish that he did not act arbitrarily, ca-

priciously, or illegally. *See Saurer v. Board of Zoning Appeals,* 629 N.E.2d 893 (Ind.Ct. App.1994). We find no error.

### II. *Void for Vagueness*

The City argues that the trial court erred in holding that the September 2, 1994 stop work order issued by the Zoning Administrator was invalid on due process and vagueness grounds. Specifically, the City asserts that neither CWMI nor the trial court cited authority holding that a stop work order must meet a constitutionally imposed standard of specificity. In response, CWMI contends that the burden was on the Zoning Administrator to apprise CWMI as to the precise facts that violate the zoning ordinance.

■ On February 6, 1996, in the "Court decision partially granting and partially denying CWMI's motion for summary judgment," the trial court refused to afford the City injunctive enforcement of the stop work order affirmed by the BZA because the order was "too vague and general to be enforceable because it fails to specify what conduct or condition on the land is in violation." (R. 3846). We agree.

The September 2, 1994 stop work order issued by the Zoning Administrator to CWMI states:

I do hereby order stayed all operations on your original 151 acres which do not conform to the provisions of improvement location permit No. 12964 (dated 25 September 1975) and the restrictive covenants. (R. 785).

■ Although our research of Indiana law has revealed no cases holding that a stop work order must meet some constitutionally imposed standard of specificity, we find *Yater v. Hancock County Planning Commission* instructive. 614 N.E.2d 568 (Ind.Ct.App. 1993). In that case, we held that the Plan Commissioner had a duty to furnish specific and concrete reasons so that developers could comply with applicable ordinances. Although that case stands for the rule that zoning ordinances must be specific and certain so as to apprise the property owner, we apply that rule to violations of zoning ordinances. Thus, basic constitutional due pro-

cess considerations about fair notice require that a stop work order issued by a Zoning Administrator be reasonably specific and concrete so as to fairly apprise the wrong-doer of the specific violation.

## I. Mootness

■ First, we must address CWMI's contention that the City's appeal is moot because closure of its landfill has deprived the City of any remedy on remand, and the agreed judgment entered into by CWMI, the Zoning Administrator and the BZA renders moot the City's claims in this appeal. In response, the City argues that its appeal is not moot because this court has already ruled on the mootness issue in *City of New Haven v. Chemical Waste Management of Indiana*, a prior decision in this same case. We found that:

> The City's status as a party to the lawsuit and the judgment rendered therein does not end merely because the original parties decided to settle their claims and to forego the pursuit of an appeal. Dismissal of the suit as between the original parties does not render moot the City's claims.

685 N.E.2d 97, 102 (Ind.Ct.App.1997). Specifically, the City contends that this ruling is the law of the case as to the issue of mootness, and effectively precludes this court from ruling that the present appeal is moot. Under the law of the case doctrine, an appellate court's determination of a legal issue is binding in subsequent appeals given the same case and substantially the same facts. *State v. Lewis*, 543 N.E.2d 1116, 1118 (Ind. 1989). All issues decided directly or implicitly in a prior decision are binding in all subsequent portions of the same case. *Indiana Farm Gas Production Co. v. Southern Indiana Gas & Electric Co.*, 662 N.E.2d 977, 981 (Ind.Ct.App.1996), *trans. denied*. The doctrine is based upon the policy that once an issue is litigated and decided, "that should be the end of the matter." *Lewis*, 543 N.E.2d at 1118. However, unlike the rule of res judicata, the law of the case doctrine is not a uniform rule of law, but rather a discretionary rule expressing the practice of the courts to refuse to reopen what has previously been decided. *Id.* Although a court has

the power to revisit prior decisions of its own or of a coordinate court, as a rule, courts should be loathe to do so in the absence of extraordinary circumstances. *Id.*

■ In *City of New Haven*, this court affirmed the trial court's ruling that the City had satisfied the conditions of permissive intervention because its claims against CWMI had questions of law or fact in common with those of the BZA. Specifically, we held that the City met the procedural requirements to bring an appeal to this court even in light of the Agreed Judgment. *City of New Haven*, 685 N.E.2d at 102. However, CWMI argues that it is free to raise the issue of mootness in its present appeal because that issue was not previously resolved or addressed by this court. Furthermore, CWMI contends that the law of the case doctrine does not apply in this case because the doctrine only precludes subsequent litigation on the precise legal issue previously determined. We disagree with CWMI's reasoning.

Although we did not specifically address the issue of the mootness of the City's claim in *City of New Haven*, we nevertheless ruled that the City had the right to appeal a prior judgment "to the extent that it is adverse to those interests which made intervention possible in the first place." *Id.* Thus, the law of the case doctrine does apply because we implicitly ruled on the mootness issue in a prior decision in this same case with substantially the same facts and we will not reopen what we have previously decided.

■ CWMI next contends that the City has no remedy available on remand because CWMI received its last shipment of waste at the facility in May 1998, the facility is effectively closed, and therefore CWMI can no longer violate or continue to violate the ACZO provisions. Specifically, CWMI argues that the City has no available remedy for an alleged violation under the ACZO, and therefore this appeal should be dismissed. We disagree.

First, in *City of New Haven*, we found that the City, as a remonstrator, had a right to petition for review by writ of certiorari pursuant to Ind.Code §§ 36–7–4–1000, *et seq.*,

which provides for remedies and enforcement of BZA decisions by aggrieved parties. *City of New Haven*, 685 N.E.2d at 102. In particular, we held that pursuant to Ind.Code § 36–7–4–1005(b) the City satisfied the definition of an adverse party as "any property owner whose interests are opposed to the petitioner...." *Id.* at 103. Thus, we have already determined in this case that the City is entitled to petition for review of the BZA decisions as an adverse party. Second, ACZO § 3–13–4–4 does provide the City as "any property owner" with the right to obtain an injunction against CWMI. This ordinance states that:

> any property owner who may be especially damaged by any such violation of this Ordinance may initiate an action for injunction ... to restrain any person or governmental unit from violating or continuing to violate any provision of this Ordinance and to cause such violation to be prevented or abated. (R. 3080).

Finally, CWMI contends that the City is not entitled to a negative injunction under ACZO § 3–13–4–3 because the words "restrain," "prevent," and "abate" all refer to actions of present or future violations that cannot occur because the facility is closed. However, the City seeks to enforce the underlying covenants prohibiting visibility of the landfill from any existing residence as well as the ACZO provisions limiting the existing landfill height and requirement of permits and Special Exceptions for landfill construction. Therefore, the City can initiate an injunction action against CWMI for alleged continued violations of the covenants and ACZO provisions. The City's appeal is not moot.

## II. *BZA Standard of Review*

Next, CWMI contends that the trial court erred by not invalidating the BZA's decisions because the BZA did not afford CWMI a de novo review of the evidence supporting the Zoning Administrator's claims of ACZO violations in the stop work orders and notices of violation. CWMI argues that due process was violated because the BZA instead used an arbitrary, capricious, illegal or contrary to state law standard of review in hearing CWMI's appeal of the Zoning Administrator's orders. In response, the City asserts that due process does not require that the BZA provide CWMI a de novo hearing. Specifically, the City argues that due process of law was not contravened where the BZA applied the standard of the ACZO Rule of Procedure 4.01, which provides that an appeal to the BZA of the Zoning Administrator's decision be "on the basis of such decision being arbitrary, capricious, illegal or contrary to state law or the provisions of the Ordinance or the Rules." (R. 1274). We agree.

■ Ind.Code § 36–7–4–918.1 authorizes BZA review of any order or decision made by a zoning administrator. Furthermore, Ind. Code § 36–7–4–919(d) provides: "Upon appeal, the board may reverse, affirm, or modify the order, requirement, decision, or determination appealed from. For this purpose, the board has all the powers of the official, officer, board, or body from which the appeal is taken." Thus, we affirm the trial court's finding that the BZA's decision to limit the exercise of its power by applying an arbitrary, capricious, or illegal standard rather than broadening its power by affording CWMI a de novo hearing with the BZA standing in the shoes of the Zoning Administrator was well within the BZA's discretion. We find no error in the trial court's failure to vacate the BZA decisions of CWMI's appeal for not applying a de novo review standard.

## III. *Bias*

Next, we consider the trial court's denial of CWMI's motion for summary judgment finding that CWMI was not denied due process of law on the basis of institutional and personal bias of the BZA. CWMI argues that the trial court erred in failing to vacate all BZA decisions on the ground that a single member of the BZA, George W. Pond (Pond), was biased against CWMI as well as the bias of the entire BZA. The trial court denied CWMI's motion for summary judgment and found that by necessarily knowing of the bias but failing to timely raise the issue at three different hearings, CWMI waived its assertion that the BZA was biased against it. Furthermore, the trial court was unable to determine whether as a matter of law Pond's

participation with the Allen County Dump Stoppers, Inc., an organization actively and publicly opposed to CWMI's operations at the landfill, created a reasonable basis for doubting his impartiality.

On February 23, 1993, the City filed a complaint against CWMI and the BZA in the Allen County Superior Court, alleging violations of the ACZO by CWMI. On September 8, 1994 CWMI filed a counterclaim against the BZA, joining the Zoning Administrator as a party defendant. On September 13, 1994 the Zoning Administrator filed a counterclaim against CWMI but the BZA continued to defend itself against CWMI's claim rather than affirmatively filing a complaint, cross-complaint, or counterclaim against CWMI. CWMI now claims that the BZA was biased because it was in litigation against CWMI at the same time it was ruling on CWMI's appeal of the Zoning Administrator's allegations of ACZO violations. However, as the trial court pointed out, CWMI failed to raise the issue of bias with the BZA due to its litigation with CWMI at any of the BZA hearings on April 12 and 24 and May 10, 1995. Thus, the trial court ruled that CWMI waived its claim that the BZA was biased against it at the April 12 and 24 and May 10, 1995 hearings because CWMI "cannot initiate a legal claim in a lawsuit against the BZA (September 8, 1994) then later pursue zoning appeals and requests before the BZA (April 12 and 24 and May 10, 1995) and then later (on October 11, 1995) first raise an allegation of bias by the BZA yet having at all times necessarily known of these circumstances of which it first complains in late 1995." (R. 3833).

CWMI's second claim of bias is that the trial court erred in failing to invalidate all of the BZA proceedings because a biased BZA member participated in any of them. In 1995, Pond was a board member of the Allen County BZA and also a member of the Allen County Dump Stoppers, Inc. Prior to the initial BZA hearing on April 12, 1995, CWMI registered three written objections to Pond's participation in the BZA hearing. However, Pond still participated as a member of the BZA in the April 12 hearing and then recused himself prior to the next BZA hearing on April 24, 1995. CWMI now argues that the trial court should have concluded that Pond was biased against it, thereby tainting all BZA proceedings, and therefore the court should have invalidated all of the BZA proceedings relating to CWMI. The trial court was "unable to determine whether as a matter of law Pond had a conflict of interest and whether as a matter of law a reasonably objective person would have a reasonable basis for doubting [Pond's] impartiality and therefore CWMI's motion for summary judgment is denied as to this issue." (R. 3835).

 Due process in administrative hearings requires that all hearings be orderly, judicious, fundamentally fair, and conducted before an impartial body. *McBride v. Board of Zoning Appeals of Evansville–Vanderburgh Area Plan Commission*, 579 N.E.2d 1312, 1315 (Ind.Ct.App.1991). This requirement means that agency members' decisions may not be swayed by preconceived biases and prejudices. *Ripley County Board of Zoning Appeals v. Rumpke of Indiana, Inc.*, 663 N.E.2d 198, 209 (Ind.Ct.App.1996), *reh'g. denied, trans. denied.* When a biased board member participates in a decision, the decision will be vacated. *Id.* Nevertheless, because a zoning board is a body usually composed of persons without legal training, courts are reluctant to impose strict technical requirements upon their procedure. *McBride*, 579 N.E.2d at 1315. Furthermore, in the absence of a demonstration of actual bias, we will not interfere with the administrative process. *Ripley Cty.*, 663 N.E.2d at 209.

In the case at hand, we are reviewing decisions by the trial court that CWMI waived its assertion of institutional bias by failing to timely raise the issue and the existence of genuine issues of material fact as to Pond's impartiality. The issue on appeal is whether denial of summary judgment against CWMI on the issue of bias was in error.

 The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Brown v. Lowell Mining Co., Inc.*, 636 N.E.2d 154, 155 (Ind.Ct.App.1994). When reviewing the grant or denial of a motion for summary

judgment our standard of review is the same as that used by the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Webb v. Jarvis,* 575 N.E.2d 992, 994 (Ind.1991). On review, we may not search the entire record to support the judgment, but may only consider that evidence which has been specifically designated to the trial court. *Irvine v. Rare Feline Breeding Center, Inc.,* 685 N.E.2d 120, 123 (Ind.Ct.App.1997), *trans. denied.* The party appealing the trial court's grant or denial of summary judgment has the burden of persuading this court that the trial court's decision was erroneous. *Id.* A summary judgment determination shall be made from any theory or basis found in the evidentiary matter designated to the trial court. Ind.Trial Rule 56(C). Thus, our standard of review is limited to determining whether the trial court's decision to deny summary judgment to CWMI is erroneous, and we must affirm on any theory supported by the judgment.

■ In the case at hand, because of the existence of genuine issues of material fact before the court, the trial court was unable to find as a matter of law that either the entire BZA or Pond, as a member of the BZA, was biased against CWMI. Specifically, the court found that the record was silent as to what extent Pond was a member of the Dump Stoppers organization and whether his association with the Dump Stoppers affected the BZA proceedings. Additionally, the court found that CWMI waived its assertion of institutional bias because it necessarily knew of the circumstances of bias but continued litigation without raising the issue. Thus, on the basis of the lack of designated evidence and our deferential standard, we cannot say the trial court's denial of summary judgment against CWMI on the issue of bias was erroneous.

## IV. Abuse of Discretion

### A. Intervention

First, CWMI argues that the trial court abused its discretion in allowing the City to intervene permissively in CP–642, the enforcement action of the stop work orders and notices of violation. Specifically, CWMI contends that the City failed to show any issues of fact or law in common with the main action because the City merely duplicated the BZA's and the Zoning Administrator's complaint.

■ Pursuant to Ind.Trial Rule 24(B)(2), an applicant may be permitted to intervene in an action when the applicant's claim or defense have a question of law or fact in common with the proceeding and intervention will not prejudice or unduly delay the adjudication of the rights of the original parties. On appeal, the trial court's determination on a motion to intervene is only reviewable for an abuse of discretion. *Heritage House of Salem, Inc. v. Bailey,* 652 N.E.2d 69, 73 (Ind.Ct.App.1995). In reviewing the trial court's exercise of discretion, the facts alleged in the motion must be taken as true. *Id.* To constitute an abuse of discretion, the trial court's decision must be clearly against the logic and effect of the facts and circumstances before the court or reasonable and probable inferences to be drawn therefrom. *Developmental Disabilities Residential Facilities Council v. Metropolitan Dev. Comm'n of Marion County, Ind.,* 455 N.E.2d 960, 965 (Ind.Ct.App.1983). Further, it is well settled that where the effect of granting a motion to intervene would open up new areas of inquiry or raise unrelated issues, the motion should be denied. *Heritage House,* 652 N.E.2d at 74.

■ On June 26, 1995, the City filed a petition to intervene in the action of the Allen County BZA seeking injunctive relief to rectify zoning violations found by the BZA to exist in its affirmance of certain stop work orders issued by the Allen County Zoning Administrator. In support of its motion, the City asserted that it had a direct interest in the enforcement of local zoning against CWMI and it must be permitted to intervene to protect its interests. On October 16, 1995, the trial court granted the City's motion to intervene, finding that the City's claims have questions of law and fact in common with the BZA and intervention will not unduly delay or prejudice the rights of the original parties. We must agree with the trial court in permit-

ting the City to intervene permissively in this case. We find no abuse of discretion.

### B. *Conditional Violation*

Next, CWMI argues that the trial court abused its discretion in conditionally finding that CWMI was in violation of the stop work orders between February 6 and August 30, 1995. Specifically, CWMI contends that the trial court could not find CWMI in violation of the stop work orders because the trial court already concluded that the stop work orders and notices of violation issued during this period were unenforceable because of the BZA's improper placement of the burden of proof on CWMI. However, pursuant to ACZO 3–13–3–3, the trial court conditionally found that between February 6, 1995 and August 30, 1995, CWMI was in violation of the February 6, 1995 stop work orders. Further, the trial court denied the Zoning Administrator's motions for summary judgment on four counts "because CWMI's appeal of the February 6, 1995 stop work orders and notices of violation has not yet been legally determined by the BZA and presently the appeals pending before the BZA and the stop work order may or may not ultimately be upheld as valid and enforceable by the BZA." (R. 3882). Therefore, CWMI's argument is misplaced because the trial court had not yet ruled upon the validity of the February 6, 1995 stop work order and CWMI is arguing about the validity of the September 2 and 9, 1994 stop work orders that were already determined to be invalid and unenforceable.

■■■ Pursuant to ACZO 3–13–3–3, a decision by the Zoning Administrator to issue a stop work order may be appealed to the BZA. "However, the decision of the Zoning Administrator to issue a stay order shall remain in effect during the pendency of the appeal, and thereafter unless modified or revoked by the Board.... A violation of such an order issued by the Zoning Administrator ... shall be considered a violation of this ordinance." Thus, CWMI was required to obey the stop work order until there was a judicial determination of its legality on appeal. The trial court properly found that CWMI was in violation of the stop work

order based upon the condition of the ultimate validity of the stop work order on appeal. We find no error.

### V. *Res Judicata/Collateral Estoppel*

CWMI contends that the trial court erred in refusing to give res judicata or collateral estoppel effect to rulings on preliminary injunction in the Allen Superior Court case CP–308. Specifically, CWMI argues that the requests by the BZA and the City for injunctive relief for CWMI's refusal to adhere to a stop work order were barred by res judicata because the Zoning Administrator and the City had already sought injunctive relief in CP–308 on several occasions with the judge denying those requests. In CP–308, the BZA, Zoning Administrator and the City pursued claims against CWMI seeking judicial injunctive enforcement of the September 2 and 9, 1994 stop work orders by seeking the issuance of a TRO. Further, in the Allen Circuit Court case CP–642, the BZA, Zoning Administrator and the City sought judicial injunctive enforcement of the February 6, 1995 stop work order. However, the trial court judge rejected CWMI's res judicata and collateral estoppel arguments, finding that in CP–308, the judge "denied an application for a temporary restraining order against CWMI for no stated reason other than to maintain the status quo that existed prior to the filing of the application which decision was not a decision on the merits of the case." (R. 3859). Further, the court concluded:

> that the issues of whether non-compliance with an Allen County Zoning Administrator stop work order constitutes a violation of the Allen County Zoning ordinance ... have not been fully litigated on the merits in [CP–308] and therefore [the BZA, Zoning Administrator and the City] can raise and argue these issues in this case because the doctrines of res judicata and collateral estoppel do not bar them from doing so.

(R. 3860).

■■■ The law of res judicata is well-established in Indiana. It operates to "preclude litigation regarding matters which have already been litigated.... [A] judgment on the merits is an absolute bar to a subsequent

action between the same parties on the same claim." *Mutchman v. Consolidated Coal Co.,* 666 N.E.2d 461, 464 (Ind.Ct.App.1996), *reh'g. denied, trans. denied.* The denial of a preliminary injunction is in the nature of an interlocutory order. Ind.Appellate Rule 4(B)(3); *see Hollingsworth v. Key Benefit Adm'rs, Inc.,* 658 N.E.2d 653, 655 (Ind.Ct. App.1995). Further, the very nature of interlocutory orders is that the case is not fully developed before the case proceeds to a final hearing on the merits. *Id.*

■ In this case, the trial court properly found that res judicata or collateral estoppel did not apply because the trial on the merits in CP–308 had not yet been held when the Superior Court judge denied the TRO and ordered "all pending requests for injunctive relief consolidated with the trial on the merits in this cause of action." (R. 3859).

### VI. *Summary Judgment*

#### A. *The Landfill: A Structure as a Matter of Law?*

■ Next, CWMI argues that the trial court erred in denying it summary judgment on the "height" stop work order, since as a matter of law, the landfill is not a "building" or a "structure" under the ACZO. Specifically, CWMI contends that no reference to facts was necessary and the court needed only to examine the language of the ACZO to determine that CWMI's landfill was not a structure. However, the trial court found that it was without sufficient factual information to make a determination whether CWMI's landfill units in fact exceeded 75 feet in height and constituted structures. Further, nowhere does the record of proceedings establish that the landfill operations exceeded 75 feet in height other than the Zoning Administrator's stop work order. Thus, because genuine issues of material fact existed, the trial court denied CWMI's motion for summary judgment on the height limit stop work order.

On February 6, 1995, the Zoning Administrator issued a stop work order against CWMI alleging that the Adams Center Landfill Phase III operations exceeded 75 feet in height, thereby violating the ACZO.[2] ACZO § 3–8–1–1 provides:

> No building or structure shall be erected, altered, enlarged, or reconstructed to exceed the height limit established for the District where such building or structure is located, as follows ... I–1, I–2, I–3, I–4 ... 75 feet.

(R. 3850).

ACZO § 3–2–2–2 defines "building" as:

> a structure having a roof supported by columns or walls designed, built or used for the enclosure, shelter or protection of persons, animals, chattels or property.

(R. 3850). We must agree with the trial court that the Phase III landfill operations do not fit this definition. ACZO § 3–2–2–2 defines "structure" as:

> Anything constructed or erected with a fixed location on the ground, or attached to something having a fixed location on the ground. Among other things, structures include buildings, mobile homes, walls, fences, billboards and poster panels, and pools.

(R. 3850). CWMI argues that as a matter of law, ACZO § 3–8–1–1 does not apply to its landfill operations because it is not a building or a structure. Specifically, CWMI asserts that ACZO § 3–2–2–2 defines a sanitary landfill as "a method of disposing of refuse on land ....," and thus the landfill is not constructed with a fixed location on the ground, rather it is the ground.

Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The purpose of summary judgment is to determine litigation about which there can be no factual dispute and which can be determined as a matter of law. *Howell v. Indiana–American Water Co., Inc.,* 668 N.E.2d 1272, 1274 (Ind.Ct.App.1996), *trans. denied.* The trial court's determination of

---

**2.** The 75 foot height issue concerns landfill operations called "residual management units" or "cells" which are multiple layers of waste inter-spersed among multiple liners and using a leachate collector and drainage piping system.

summary judgment is clothed with a presumption of validity and the losing party bears the burden of proving that the trial court erred in its determination of summary judgment. *Id.* When reviewing a motion for summary judgment, we stand in the shoes of the trial court, applying the same standard utilized by the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Id.* Summary judgment is inappropriate if we must weigh conflicting evidence to reach a decision, or if there are conflicting inferences which may be drawn from undisputed facts. *National City Bank, Indiana v. Shortridge,* 689 N.E.2d 1248, 1250 (Ind.Ct.App.1997).

In this case, the City argues that the trial court did not err in denying CWMI's motion for summary judgment since, as a matter of law, the landfill cells are "structures." In the designation of materials upon which it relied in opposition to CWMI's motion for summary judgment, the City cited evidence supporting the conclusion that the landfill cells were structures. In particular, the City designated: CWMI plans, diagrams, and brochures showing landfill cells as structures, CWMI's testimony at a BZA hearing describing the landfill cells as structures, and CWMI's description of the cells as elaborately engineered and constructed. On the other hand, CWMI argues that its attorney consistently maintained before the BZA that its landfill was not a "structure" as defined under the ACZO, even submitting a brief to the BZA urging dismissal of the height stop work order because the landfill was not a structure. Further, CWMI argues that CWMI's reference to aspects of the landfill as "constructed" is not an admission that any part of the landfill is a "structure." Thus, the trial court properly denied CWMI's summary judgment because there were genuine issues of material fact and conflicting evidence. We agree with the trial court that summary judgment was inappropriate.

### B. *1974 Covenants*

CWMI next contends that the trial court erred in failing to enter summary judgment in its favor that the 1974 covenants were ultra vires, void ab initio or otherwise unenforceable. Specifically, CWMI argues that the trial court erroneously decided that CWMI's predecessor in interest himself proposed the 1974 covenants, therefore equitably estopping CWMI from challenging them. Further, CWMI argues that the trial court erred in concluding that CWMI was judicially estopped from challenging the 1974 covenants because CWMI had previously acknowledged the validity of the 1974 covenants.

The following is the factual background of the 1974 covenants. On July 19, 1974, Amon Brooks (Brooks), then the owner of the original site, filed an application with the Allen County Plan Commission for the construction, operation and occupancy of a landfill on the original site. On July 22, 1974, the Allen County Zoning Administrator refused to issue a permit for the use proposed by Brooks, and Brooks appealed this decision to the BZA. On September 18, 1974, the BZA reversed the Zoning Administrator's denial and ordered the Zoning Administrator to issue the permits sanctioning construction and operation of a sanitary landfill on the original site. This reversal and order to issue permits to the landfill was contained in a published and recorded document agreed to by the BZA and Brooks, and included several requirements to be included in the deed of conveyance from Brooks to his successor as covenants running with the land. On September 18, 1974, the BZA granted to the Zoning Administrator the power to enforce the 1974 covenants. On February 6, 1995, the Zoning Administrator issued against CWMI a stop work order alleging several violations of the 1974 covenants. On May 10, 1995 the BZA affirmed and upheld certain of the alleged violations of the 1974 covenants.

On February 6, 1996, the trial court denied CWMI's motion for summary judgment on the February 6, 1995 stop work order and the BZA's affirmance of notices of violation regarding the 1974 restrictive covenants, finding that there existed no genuine issue of material fact regarding the validity of the 1974 covenants running with the land. In particular, the court found that CWMI's operations on the original 151 acre site remained subject to the site-specific 1974 cove-

nants as well as the ACZO in effect on July 19, 1974 when Brooks submitted his permit application to the BZA. Further, the court found that CWMI was precluded from challenging the validity of the 1974 covenants because it failed to timely pursue a certiorari action within thirty days of September 18, 1974, and that CWMI had previously acknowledged in court proceedings the validity of the 1974 covenants and the right of the Zoning Administrator to enforce them.

We must agree with the trial court in denying CWMI's motion for summary judgment regarding the stop work orders and notices of violation in connection with the 1974 covenants. The covenants were not ultra vires or unenforceable as a matter of law. In fact, there is substantial evidence in the record to support the finding that CWMI's 151 acre site remained under the 1974 covenants voluntarily entered into by Brooks. As we stated above, when reviewing a motion for summary judgment, we stand in the shoes of the trial court, applying the same standard utilized by the trial court, and we will resolve any conflicting inferences from undisputed facts in favor of the non-moving party. In this case, the undisputed facts reveal a conflicting inference of whether Brooks voluntarily agreed to the restrictive covenants. However, there is substantial evidence in the record to support the conclusion that Brooks agreed to the covenants and that they ran with the land to remain in effect upon CWMI.

## CONCLUSION

In conclusion, we find that the trial court did not err or abuse its discretion in its rulings of CP–642 and CP–764, the City's appeal is not moot, and the BZA did apply the correct standard to review CWMI's appeal of the Zoning Administrator's stop work orders.

Affirmed.

RUCKER and GARRARD, JJ., concur.