

FILED

Jul 13 2016, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| John Johnston<br>Wabash, Indiana | Jerry T. Drook<br>Marion, Indiana |

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jack A. Enslen,<br>*Appellant-Defendant,*<br><br>v.<br><br>Area Plan Commission of Grant County Indiana,<br>*Appellee-Plaintiff.* | July 13, 2016<br><br>Court of Appeals Case No.<br>27A04-1512-OV-2109<br><br>Appeal from the Grant Superior Court<br><br>The Honorable Warren Haas, Judge<br><br>Trial Court Cause No.<br>27D03-1504-OV-41 |

**Altice, Judge.**

## Case Summary

[1] A home owned by Jack Enslen has been uninhabitable, and indeed uninhabited, since 2002. He obtained building permits in 2009 and 2012 with the stated intention of bringing the home up to code, but no actual work was ever started on the property due to Enslen's continued lack of finances. The Grant County Area Plan Commission (the APC) eventually filed a complaint

for civil zoning violation against Enslen. Following a bench trial, the trial court issued an order directing Enslen to raze the structure within thirty days. Enslen asserts a number of arguments on appeal that all boil down to a claim that the trial court's judgment is clearly erroneous.

[2] We affirm.

### Facts & Procedural History

[3] From about 1976 to 2001, Enslen lived in the home in question, which is in a "built up residential area" in Grant County. *Transcript* at 29. When he and his wife divorced in 2001, the real estate was appraised at $17,500, and Enslen was awarded this asset in the dissolution. At that point, he hired a work crew to remodel the home. The home was apparently gutted and the siding removed. The home no longer had plumbing, power, or heat. A new roof was put on in 2002, but then all work ceased when Enslen ran into financial difficulties due to medical issues. He has not lived in the home or performed any further work on the home since 2002.

[4] In 2009, Enslen filed an application with the APC for a permit to remodel the home and bring it up to code. The permit was issued in December 2009, and extended four times. Enslen then sought and obtained a new permit in September 2012. Enslen explained at trial that he obtained the permits so that "if money became available then I could work on that house, I was legal." *Id.* at 18. Money never became available and the permits expired with no work performed.

[5]     On March 27, 2015, the APC sent a Warning Ticket and Notice of Civil Zoning Violation (the Notice) to Enslen. With respect to the nature of the violation, the Notice indicated that the structure was vacant and not maintained in a manner that would allow human habitation. Additionally, the Notice alleged the home was "dangerous due to violations of building codes, dilapidation, decay, and a public nuisance." *Exhibits*, Defendant's Exhibit A. The Notice directed Enslen to obtain a building permit, bring the structure into compliance with current building codes, and secure a certificate of occupancy, all within thirty days, or remove the unsafe structure and all debris.

[6]     After he received the Notice, Enslen went to the APC to obtain another permit. The director of the APC denied his request for a new two-year permit and directed Enslen to work under the 2012 permit. Enslen, however, did not request an extension to work under the expired permit and he completed no work on the home.

[7]     On April 29, 2015, the APC filed a complaint against Enslen, alleging that the home was an unsafe structure and requesting a judgment requiring, among other things, that Enslen "bring the structure into compliance with the applicable building codes or remove the structure and related debris from the property within thirty (30) days". *Appendix* at 11. Enslen filed a counterclaim along with his answer, claiming that the APC unlawfully refused to issue him a permit and that the Notice was "constitutionally defective and deficient in that it did not identify with reasonable certainty" the specific building codes violated

or the specific conditions of the property that did not comply with the building codes. *Id*. at 13.

[8] The cause proceeded to a short bench trial on October 29, 2015. Bob Highly, a code enforcement officer and building inspector, testified on behalf of the APC. Highly indicated that the home lacks all of the following: kitchen, bath, permanent heat system, potable water, weather tight exterior, smoke alarms, and GFCI outlets. Further, he noted that the home has an incomplete electrical system and the means of egress through the inside of the home is restricted by numerous possessions.

[9] Enslen claimed that the home was structurally sound but conceded that it had no plumbing, working electricity, heat, gas, or hard exterior siding. After testifying that no one had lived in or worked on the home since 2002, Enslen acknowledged that the permits he obtained were useless to him due to his financial circumstances. The trial court then questioned whether he expected funds to become available in the near future, and Enslen responded, "I'm afraid, I'm scared." *Transcript* at 19. He indicated that his financial situation was still "[k]inda rough." *Id*.

[10] At the conclusion of the hearing, the trial court stated in part:

> I don't think it's that difficult to figure out what you would've needed to do. If you had the ability to do it, you know it would give me so many more alternatives than I feel I currently have, but you've done your very best for the last thirteen (13) or fourteen (14) years and were unsuccessful.…there's zero (0) hope in my mind that this is gonna be done[.]

*Id*. at 31. The trial court entered judgment in favor of the APC and, on November 17, 2015, issued an order directing Enslen to remove the structure and related debris from the property within thirty days and pay a fine and court costs.[1] The court authorized the APC to correct the violation and assess costs to Enslen if he failed to remove the structure as ordered. Enslen now appeals.

## Discussion & Decision

The trial court entered a general judgment. Accordingly, without reweighing the evidence or considering witness credibility, we will affirm the trial court if the judgment is sustainable upon any theory consistent with the evidence. *Techna-Fit, Inc. v. Fluid Transfer Prods., Inc.*, 45 N.E.3d 399, 413 (Ind. Ct. App. 2015). "On appellate review, due regard must be given the trial court's opportunity to judge the credibility of witnesses, and the judgment should not be set aside unless clearly erroneous." *Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 241 (Ind. 1997).

Enslen argues that the trial court's judgment is clearly erroneous because the APC presented no evidence that he violated a local zoning ordinance or Ind. Code § 36-7-9-4. Further, he asserts that the Notice was constitutionally defective.

---

[1] The order contains a scrivener's error in that it indicates the hearing was on the APC's "Citation for violation of Court order". *Appendix* at 9. The complaint filed by the APC, however, was titled "Complaint for Civil Zoning Violation". *Id*. at 10. This error is immaterial.

[13]    We turn first to Enslen's constitutional challenge. In this regard, he argues that the Notice was "void for vagueness and violated fundamental Due Process because it did not furnish specific and concrete reasons so Enslen could comply with the provisions of the applicable ordinance." *Appellant's Brief* at 25. In other words, he asserts that he was not "fairly apprised" of the specific ordinance violations that needed to be abated. *Id*. at 26.

[14]    The APC argues in response that Enslen waived this constitutional issue by not raising it below. Indeed, while he alleged in his counterclaim that the Notice was "constitutionally defective and deficient", he did not present any argument or evidence in support of this claim at trial.[2] *Appendix* at 13.

[15]    Waiver aside, we conclude that Enslen's reliance on *City of New Haven v. Chem. Waste Mgmt. of Ind., L.L.C.*, 701 N.E.2d 912 (Ind. Ct. App. 1998), is misplaced. In that case, the city filed for injunctive enforcement of a stop work order, which sought to stay all of the defendant's operations on the property "which do not conform to the provisions of [the improvement location permit] and the restrictive covenants." *Id*. at 918. The trial court refused to grant injunctive relief because the stop work order was too vague and general to be enforceable. We affirmed, holding that "basic constitutional due process considerations about fair notice require that a stop work order issued by a Zoning

---

[2] The Notice was admitted into evidence with respect to his argument that the Notice directed him to obtain a permit, but the APC refused to give him a new permit when he attempted to do so. Enslen made no reference to his constitutional claim when introducing this evidence at trial.

Administrator be reasonably specific and concrete so as to fairly apprise the wrongdoer of the specific violation." *Id*. at 918-19.

[16] In the case at hand, the APC was not seeking to enforce a stop work order, or even the Notice. Rather, it sought the removal of an allegedly unsafe structure as defined by statute and local ordinance. We do not find the lone case relied upon by Enslen in this regard, *City of New Haven*, controlling. Moreover, we agree with the APC's observation that the evidence presented at trial – most notably, Enslen's own testimony – established that his problem with compliance was not that he did not understand what needed to be done but that he did not have the financial means to do it.[3]

[17] We now turn to Enslen's argument that the APC presented no evidence at trial that the home violated a local zoning ordinance or Ind. Code § 36-7-9-4. He begins by attacking Highly's testimony regarding the condition of the property. He argues that Highly had no personal knowledge because he had never been inside the home.[4] We reject Enslen's invitation to reweigh the evidence in this regard. *See Techna-Fit, Inc.*, 45 N.E.3d at 413. Moreover, Enslen himself

---

[3] Enslen also complains that the APC refused to give him a permit to complete the work required by the Notice. The record establishes that Enslen was directed to work under his prior permit, and if he was concerned about the legality of doing so, he could have sought an extension. Moreover, the record makes clear that issuance of a new permit (or even an extension) would have been for naught due to Enslen's admitted lack of funds.

[4] Highly's testimony in this regard was based on reports from a building inspector. Enslen did not object to this testimony at trial.

testified at trial that the home lacked plumbing, working electricity, heat, gas, and hard exterior siding.

[18] Enslen next addresses I.C. § 36-7-9-4(a),[5] which provides:

> For purposes of this chapter, a building or structure, or any part of a building or structure, that is:
>
>> (1) in an impaired structural condition that makes it unsafe to a person or property;
>>
>> (2) a fire hazard;
>>
>> (3) a hazard to the public health;
>>
>> (4) a public nuisance;
>>
>> (5) dangerous to a person or property because of a violation of a statute or ordinance concerning building condition or maintenance; or
>>
>> (6) vacant or blighted and not maintained in a manner that would allow human habitation, occupancy, or use under the requirements of a statute or an ordinance;
>
> is considered an unsafe building.

The parties and the trial court focused on subsection (6) in determining whether the home should be considered an unsafe building.

[19] Enslen argues, as he did below, that the home was not vacant because he had personal property therein. He contends that the "common, ordinary meaning

---

[5] The Building Code of Grant County expressly incorporates this statute into its unsafe structure ordinance. Grant County Areawide Zoning Ordinance, § 153.158.

of the word 'vacant' is containing nothing, empty, unfilled." *Appellant's Brief* at 21 (relying upon a common dictionary definition). Considering the legislative purpose of the statute, as expressly set out in I.C. § 36-7-9-4.5,[6] we cannot agree that a home left unoccupied for more than a decade is not vacant simply because it still contains personal property of the prior occupant. *See In re J.J.*, 912 N.E.2d 909, 910 (Ind. Ct. App. 2009) ("where [statutory] language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent"). Vacant, in this context, was plainly intended to mean unoccupied or uninhabited by an owner, tenant, or person authorized by the owner. *Cf.* I.C. § 36-7-36-6 (related chapter 36 – abatement of vacant structures and abandoned structures – defines "vacant structure" as "a structure or building that is not being occupied by an owner, tenant, or others authorized by the owner"). The trial court properly determined that the property in question was vacant.

[20] The second requirement for establishing that a structure is unsafe under I.C. § 36-7-9-4(a)(6) is that the structure is "not maintained in a manner that would allow human habitation, occupancy, or use under the requirements of a statute or an ordinance." Enslen appears to concede that the property was not fit for habitation or occupancy. He argues, however, that the APC failed to show that

---

[6] I.C. § 36-7-9-4.5 sets out detailed legislative findings regarding "vacant, deteriorated structures" and their negative effects on communities. The statute begins by recognizing that "there exists a large number of *unoccupied structure*s that are not maintained and that constitute a hazard to public health, safety, and welfare." I.C. § 36-7-9-4.5(a) (emphasis supplied). *See also* Grant County Areawide Zoning Ordinance, § 153.159(A).

it had not been maintained in a manner that would allow for some other "use", such as the storage of personal property.

[21] Enslen's argument – asserted for the first time on appeal – misses the mark. The evidence establishes that the property in question was a (vacated) personal residence, located in a "built up residential area". *Transcript* at 29. It was not a storage barn/shed/building. Further, Enslen's stated intention has always been to work on the house and bring it up to code once "money became available". *Id*. at 19.

[22] In sum, the APC sufficiently established that the home qualifies as an unsafe building under I.C. § 36-7-9-4(a)(6). Moreover, Enslen has failed to establish a constitutional violation. The trial court's judgment in favor of the APC, therefore, is not clearly erroneous.

[23] Judgment affirmed.

[24] Bailey, J. and Bradford, J., concur.