Betty A. MOORE, Appellant,

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, as Members of and as constituting the Review Board of the Indiana Employment Security Division,

and

Foundtain [*sic*] View Nursing Home, Appellees.

No. 2-180A26.

Court of Appeals of Indiana, Third District.

June 30, 1980.

L. Peter Iverson, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellees.

STATON, Judge.

Betty A. Moore appeals from a decision of the Review Board of the Indiana Employment Security Division affirming the referee's denial of benefits under the Indiana Employment Security Act. On appeal, Ms. Moore raises three issues for our consideration. Because of our disposition of the case, we will limit our discussion to only one issue. Ms. Moore asks, if the Review Board's findings, as related to her reinstatement following her incorrect discharge, were contrary to law and unsupported by substantial evidence?

We reverse and remand.

The relevant facts indicate that Ms. Moore was discharged on September 11, 1979. She filed a claim for unemployment compensation benefits the same day. On October 5, 1979, a claims deputy of the Indiana Employment Security Division denied Ms. Moore's benefits and found that she had voluntarily left "employment without good cause in connection with the work when she walked off the job and refused to return."[1]

Ms. Moore then requested and received a hearing before a referee. On November 7, 1979, the referee entered his decision affirming the decision of the deputy. Ms. Moore appealed to the Review Board which reviewed the record of the referee hearing and issued its decision without a hearing. It affirmed the referee's decision and adopted his findings and conclusions:

"FINDINGS OF FACT: The claimant worked for this employer from March 6, 1976, to September 11, 1979. She was an assistant supervisor in the kitchen earning $3.95 per hour. The claimant was incorrectly discharged from employment by this employer. The next day the claimant was reinstated by the administrator. This was because the claimant had been "discharged without following progressive discipline. The claimant was offered new employment starting at 7:30 a. m. in the morning until 6:00 p. m. in the evening except on Wednesdays and Thursdays when she was to work from 5:00 p. m. to 1:30 a. m. The claimant had a son in nursery school that she had to pick up at 5:00 p. m. If she failed to do so she would have to pay $15 for each five minutes she was late or the boy would have to be taken to a foster home and picked up there. This offer occurred on the 12th of September. On that same day she quit. She was a member of the Retail Clerk's Union Local 725. She failed to file any grievance. The employer wanted her to work these hours because of problems they were having with the patients' diets.

"CONCLUSIONS OF LAW: The claimant voluntarily left employment without good cause in connection with the work. The claimant left this employment for purely personal reasons."

Ms. Moore argues that the findings that she was "reinstated and that she quit are not supported by any evidence and are contradicted by other findings of fact which were made by the referee and adopted by the Review Board."

█ In reviewing a determination of the Review Board, this Court is limited to an examination of the evidence and the reasonable inferences drawn therefrom which support the Board's decision. *Shoup v. Review*

1. Upon being informed of a change in her working hours, Ms. Moore told her supervisor that she would be unable to stay until 6 p. m. because she had to pick up her son at the Day Care Center. She then left her job early, according to the new schedule, and was discharged for walking off the job before the scheduled quitting time. We recognize that leaving employment because of parental responsibilities does not constitute "good cause in connection with the work." *Gray v. Dobbs House, Inc.* (1976), Ind.App., 357 N.E.2d 900. However, in this situation, Ms. Moore's parental obligations are secondary in nature to our consideration of the effect of the change in her working hours.

*Bd. of Ind. Employment Sec. Div.* (1980), Ind.App., 399 N.E.2d 771. We must accept the facts as found by the Review Board unless its findings fall within one of the exceptions for which this Court may reverse. *Shoup, supra.* A reversible error has been committed if there is no substantial evidence supporting the conclusions of the Review Board. *Siddiqi v. Review Bd. of Ind. Emp. Sec. Div.* (1979), Ind.App., 388 N.E.2d 613; *Williamson Co. v. Review Bd. of Indiana Emp. Sec. Div.* (1969), 145 Ind. App. 266, 250 N.E.2d 612, 616.

 An at-will employment agreement is a contract in which mutuality and voluntariness are required; it is formed when an offer of work is accepted. Because it is a contract at will, it may be unilaterally terminated by either party. Once terminated, however, a meeting of the minds is necessary in order to once again establish the employment relationship. *Batts v. Review Bd. of Ind. Employment Sec. Div.* (1979), Ind.App., 385 N.E.2d 1174.

In *Jones v. Review Board of Ind. Emp. Sec. Div.* (1980), Ind.App., 399 N.E.2d 844, the appellant protested a change in her working hours which had been established by prior agreement with her employer. Nevertheless, she agreed to accept the change. Later, she informed her supervisor that she would be unable to work the new hours because of parental responsibilities. Judge Garrard's comments in *Jones, supra* at 845 are particularly instructive here:

"Generally, an employer has the prerogative of setting business hours, working schedules and working conditions in the absence of a specific agreement. However, an employee has the right to place conditions or limitations on his employment. If such conditions are made known to the employer and are agreed to by it, these conditions become contractual working conditions. If the working conditions are unilaterally changed by the employer and the employee chooses to terminate the employment rather than accept the change, the employee will be entitled to unemployment benefits since the reason for termination was a change in work agreed to be performed by the employee. Such reason constitutes good cause. *Wade v. Hurley* (1973), 33 Colo. App. 30, 515 P.2d 491; *Gray v. Dobbs House, Inc.* (1976), Ind.App., 357 N.E.2d 900 (concurring opinion). Likewise, if the employee is discharged for refusal to accept a unilateral change in the agreed upon working conditions, the employee would be entitled to benefits as the discharge would not be for just cause as it is defined in IC 22–4–15–1. However, if the employee chooses to remain in the employment under the changed conditions, the prior agreed upon condition will be deemed to have been abandoned and will no longer be considered part of the working conditions." (Footnote omitted.)

 In the case at hand, the record is unclear as to whether Ms. Moore had agreed to her reinstatement and whether a prior agreement as to her working schedule had existed. The Review Board found that, on September 11, 1979, Ms. Moore had been incorrectly discharged as her employer had failed to follow progressive discipline.[2] It also found that Ms. Moore had been offered employment, pursuant to the revised schedule, on September 12, 1979. There was, however, no finding that Ms. Moore had accepted this offer. Such a finding is of importance as one may not unilaterally bind another to a contract of employment. To establish an employment relationship, a meeting of the minds is necessary. *Batts, supra,* at 1176. The findings do not reflect an express agreement of acceptance nor do they state that Ms. Moore had impliedly agreed by returning to work pursuant to the new schedule.

Even the pertinent testimony is not helpful:

The Administrator

"Q. Was she discharged?

---

2. The administrator testified that, prior to her discharge, her job had not been in jeopardy. He stated that, with the exception of minor attendance problems which were unrelated to her discharge, she had been a good employee in terms of neatness and ability.

"A. She was initially discharged and then reviewed by me that afternoon and we reinstated the next day because we had not followed progressive discipline.

"Q. Did she ever come back to work?

"A. She came back to me, with me, on the 12th the next day and refused, in effect, to come back to work, the job offered her.

\* \* \* \* \* \*

EMPLOYER: Well, we want you to be productful, (sic) Okay? And your job was offered back to you.

Ms. Moore

"Q. Did you quit or were you discharged?

"A. At first I was fired. And then Mr. Williams called me back and, he reinstated me. So, I guess that's quit."

Neither Ms. Moore nor the administrator testified as to a prior agreed schedule or to her acceptance of the reinstatement. The only finding which was clear was that Ms. Moore had refused to accept the offer of employment.

If Ms. Moore was discharged for refusal to accept her employer's unilateral change in the agreed upon working conditions, she would be entitled to benefits as the discharge would not have been for just cause as it is defined in IC 1971, 22–4–15–1. *See Jones, supra,* at 845.

█ Because the findings of fact are inadequate with respect to whether Ms. Moore had agreed to the reinstatement and whether there was a prior agreement as to her working hours, as suggested by *Jones, supra,* we are unable to intelligently review the denial of benefits. Accordingly, we remand to the Review Board for further proceedings and instruct it to make more specific findings on these issues and to render the decision thereon.

Reversed and remanded.

GARRARD, P. J., and HOFFMAN, J., concur.