Jerry BLACK, Raymond Brown, John Hamilton, and Harold Udovich, Appellants–Plaintiffs,

v.

EMPLOYEE SOLUTIONS, INC., Appellee–Defendant.

No. 76A03–9904–CV–163.

Court of Appeals of Indiana.

March 16, 2000.

Kurt C. Kobelt, Madison, Wisconsin, William R. Groth, Fillenwarth, Dennerline, Groth & Towe, Indianapolis, Indiana, Attorneys for Appellants.

Andrew R. Clark, Kalina, Wills, Gisvold & Clark, Minneapolis, Minnesota, William B. Bryan, Bryan Law Office, Angola, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Jerry Black, Raymond Brown, John Hamilton and Harold Udovich (the "Employees") appeal from the order denying their motion for summary judgment and granting summary judgment in favor of Employee Solutions, Inc. ("ESI").[1] The trial court dismissed the Employees' complaint concluding that the Employees' state law wage claims were preempted by federal law and that, insofar as the claims originated from a collective bargaining agreement, they were subject to arbitration. We address one dispositive issue: whether ESI was an employer subject to wage claims under the Indiana Wage Payment Statute, Indiana Code Section 22–2–5–1 et seq.

We affirm summary judgment in favor of ESI and remand with instructions.

---

1. The Employees allege that they brought this suit on behalf of themselves and "all others similarly situated." However, ESI disputes whether a class has been certified. The Employees do not cite any evidence in the record that the plaintiffs have been certified as a class. See Ind. Trial Rule 23. Thus, we do not consider this a class action suit.

## FACTS AND PROCEDURAL HISTORY

Central States Xpress, Inc. ("CSX") was a trucking company with operations in several Midwestern states, including Indiana. The Employees worked at CSX under a collective bargaining agreement ("CBA") with the International Brotherhood of Teamsters. The CBA provided that all wage disputes were subject to arbitration and that the CBA would be binding on all successors.

In early 1996, CSX was operating without worker's compensation coverage. In an effort to secure coverage, CSX approached ESI, an employee leasing company that provides a variety of employment-related services. On March 17, 1996, CSX and ESI entered into a Service Agreement whereby ESI would provide worker's compensation coverage and would hire CSX's employees and lease them back to CSX.

ESI began processing the CSX payroll. CSX would supply ESI with a computer printout containing the names and gross earnings for each person. ESI would then calculate the deductions and net pay, issue payroll checks and send the checks to CSX, where they would be distributed. Both CSX's and ESI's names appeared .on each check. CSX would then reimburse ESI for the payroll plus ESI's service fee.

CSX did not pay ESI's invoices as agreed. ESI then terminated the contract on May 3, 1996, the same day CSX permanently ceased operations. CSX entered Chapter 7 bankruptcy. The Employees filed claims for unpaid wages and benefits with the bankruptcy court, but there were insufficient assets to pay the claims.

On January 8, 1998, the Employees filed suit against ESI asserting state law wage claims under the Indiana Wage Payment Statute, Indiana Code Section 22–2–5–1 *et seq.* Although there were no agreements between the Employees and ESI, the Employees alleged they were employees of ESI and sought unpaid wages earned prior to May 3, 1996. ESI filed a motion to dismiss under Indiana Trial Rule 12(B)(6), claiming that the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* ("LMRA") preempts the Wage Payment Statute and, in any event, that the CBA mandated arbitration of all wage disputes. ESI attached a copy of the CBA to its motion to dismiss, which converted the motion into a motion for summary judgment. After discovery, the Employees moved for summary judgment that ESI was liable as their employer for their unpaid wages.

The trial court granted summary judgment for ESI and dismissed the Employees' complaint concluding that Section 301 of the LMRA preempted the Employees' state law wage claims and that the CBA required the parties to submit all wage disputes to arbitration. The trial court also denied the Employees' motion for partial summary judgment that ESI was liable as their employer. The Employees now appeal.

## DISCUSSION AND DECISION

### Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the party seeking summary judgment to demonstrate the absence of any genuine issue of fact as to a determinative issue. *Jarboe v. Landmark Community Newspapers of Indiana, Inc.*, 644 N.E.2d 118, 123 (Ind. 1994). Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). He may not simply rest on the allegations of his pleadings. *Id.* At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing the grant or denial of a motion for summary judgment, our standard of review is the same as that used by the trial court. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *trans. denied.* We do not reweigh the evidence but will consider the facts in the light most favorable to the party opposing summary judgment. *Id.* The party appealing the trial court's grant or denial of summary judgment has the burden of persuading this court that the trial court's decision was erroneous. *City of New Haven v. Chemical Waste Management of Indiana,* 701 N.E.2d 912, 922 (Ind.Ct.App. 1998), *trans. denied.*

A summary judgment determination may be sustained on any theory or basis found in the evidentiary matter designated to the trial court. *Id.* Despite a conflict in facts and inferences on some elements of a claim, summary judgment may be proper when no dispute exists with regard to the facts which are dispositive of the litigation. *Kissell v. First Fed. Sav. Bank,* 709 N.E.2d 343, 346 (Ind.Ct.App. 1999). Once a party has moved for summary judgment, we may grant summary judgment for any other party upon the issues raised by the motion even if no motion for summary judgment has been filed by such party. Ind. Trial Rule 56(B).

### ESI's Liability as an Employer Under the Wage Payment Statute

In their complaint, the Employees requested payment of double the amount of unpaid wages earned prior to May 3, 1996, costs, interest and attorney's fees as provided under the Wage Payment Statute. The Statute states in pertinent part:

> Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him

in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

IND.CODE § 22–2–5–2. The Employees contend that they are entitled to judgment as a matter of law on the issue of ESI's liability because the uncontested facts demonstrate that ESI failed to pay the wages owed to them following their termination on May 3, 1996. ESI counters that it is not liable to the Employees because the uncontested facts establish as a matter of law that ESI was not an employer of the Employees.

The threshold and dispositive issue is whether there was an employer-employee relationship between the parties. The Wage Payment Statute is a limited purpose statute providing employees the right to receive wages in a timely fashion. The Statute does not create a right of payment in itself. The Employees' right to maintain an action is contingent upon whether ESI was their employer under the common law.

Indeed, Chapter 5 of the Wage Payment Statute does not define "employer." However, the term employer is a term of art with a distinct meaning at common law. *See Mortgage Consultants, Inc. v. Mahaney,* 655 N.E.2d 493, 495 (Ind. 1995) (Chapter 5 does not define "employee" which is a term of art with a distinct meaning at common law.) Because the Wage Payment Statute does not suggest another meaning, we interpret the statutory term "employer" under the common law definition. *See id.*

The determination whether an employer-employee relationship exists is a complex matter involving many factors.

*Rensing v. Indiana State Univ. Bd. of Trustees,* 444 N.E.2d 1170, 1173 (Ind.1983). When the claim is based on the existence of a contract, the primary consideration is whether there was an intent that a contract of employment, either express or implied, did exist. *Id.* In other words, there must be a mutual belief that there was an employer-employee relationship. *Id.* However, where as in this case the claim is based on a statutory right, the parties' contractual agreement is significant but not dispositive. *Mortgage Consultants,* 655 N.E.2d at 496. Instead, we look at the totality of the circumstances to determine whether the alleged employee is entitled to statutory benefits. *Id.* Applying these principles, we conclude that as a matter of law ESI was not an employer of the Employees.

### A. Intent to Create an Employment Relationship

The Employees assert that the intent of the parties to create an employment relationship could "hardly be more clear" from the language of the Service Agreement. They cite two provisions in support of their contention: that ESI "has in its employ qualified personnel and desires to supply drivers, mechanics and clerical personnel whose services Customer [CSX] may use" and that ESI "is the employer of personnel supplied to Customer [CSX]." We cannot agree.

Generally, where the intent of the parties can be clearly ascertained from language of the contract, courts recognize and enforce the parties' agreement. *Mortgage Consultants,* 655 N.E.2d at 496. In *Mortgage Consultants,* our supreme court considered whether a mortgage broker was an employee or an independent contractor under the Wage Payment Statute. *Id.* at 495. A contract provided that Mahaney was an independent contractor and that the agreement did not constitute an employment relationship between the parties. *Id.* In reversing the entry of summary judgment in favor of Mahaney, our su-

preme court stated that the language of the contract was not determinative of the parties' intent to create an employment relationship and that the totality of the circumstances must be taken into account. *Id.* at 496–97.

Likewise, in this case, the language of the Service Agreement between CSX and ESI is not dispositive of the parties' intent. The Agreement stated that ESI is an "employer," but it also provided that each CSX employee assigned to ESI "will be a party to an agreement" with ESI. While the Service Agreement contemplated an employment relationship, it is undisputed that the Employees were neither parties to that Agreement nor to any other agreement with ESI.

The parties disagree whether ESI was required to enter into an agreement with each CSX employee as a condition precedent to an employment relationship. The Employees note that, as a general rule, a condition precedent must be explicitly stated in a contract to be enforceable. *See Scott–Reitz Ltd. v. Rein Warsaw Assoc.,* 658 N.E.2d 98, 103 (Ind.Ct.App.1995). We think the language of the Service Agreement is sufficiently explicit.

■ The requirement that each employee assigned to ESI "will be party to an agreement" must be a condition precedent because a mutual belief between ESI and the Employees that an employer-employee relationship existed is required as a matter of law. *Rensing,* 444 N.E.2d at 1173. Indeed, even in the absence of an explicit provision requiring an agreement between the parties, mutual assent is a prerequisite to the creation of a contractual relationship. *See Jay County Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n,* 692 N.E.2d 905, 912 (Ind.Ct.App. 1998), *trans. denied.* While the contract of employment out of which the relationship of employer and employee arises may be express or implied, one may not unilaterally bind another to a contract of employment. *Moore v. Review Bd. of Indiana Employment Sec. Div.,* 406 N.E.2d 325,

327 (Ind.Ct.App.1980); *Kirmse v. City of Gary,* 114 Ind.App. 558, 561, 51 N.E.2d 883, 884 (1944). A meeting of the minds between the employer and the employee is necessary. *Moore,* 406 N.E.2d at 327.

Here, there was no meeting of the minds between ESI and the Employees. As we have stated, there were no individual agreements between ESI and the Employees. Further, the Employees contend on appeal that ESI never acknowledged it was bound by the collective bargaining agreement, citing the affidavit of the Secretary–Treasurer of Teamsters Local 200, the union official responsible for administering the collective bargaining agreement between the Employees and CSX. The affidavit states that "no CSX official ever informed me that a company known as [ESI] had in March 1996 become employer of CSX's employees that were represented by the Teamsters." The affidavit also states that absent such notice and "a commitment by ESI to assume the terms of the [collective bargaining agreement],"the Employees could not have submitted their grievances against ESI to arbitration. In essence, therefore, the Employees acknowledge they were given no reason to believe that ESI was their employer. Neither did ESI agree to the terms and conditions of the Employees' collective bargaining agreement. The evidence does not show a mutual intent of the parties to establish an employer-employee relationship.[2]

### B. Control Over the Employees

 Even if contractual intent were a genuine issue, the intent of the parties is not determinative in a statutory wage claim. The Wage Payment Statute does not suggest that intent is even a primary consideration that should be given greater weight than the hiring party's ability to control the hired party. *Mortgage Consul-*

tants, 655 N.E.2d at 497. An employer either controls or has the right to control the conduct of his agent. *Dague v. Fort Wayne Newspapers, Inc.,* 647 N.E.2d 1138, 1140 (Ind.Ct.App.1995), *trans. denied.* The right of control is determined by consideration of the following factors: the right to discharge, mode of payment, supplying tools or equipment, belief by the parties in the existence of an employer-employee relationship, control over the means used in the results reached, length of employment and establishment of the work boundaries. *Hale v. Kemp,* 579 N.E.2d 63, 67 (Ind.1991) (citing *Fox v. Contract Beverage Packers, Inc.,* 398 N.E.2d 709, 711 (Ind.Ct.App.1980)); RESTATEMENT (SECOND) OF AGENCY § 220 (1958). In order to support a determination that an employer-employee relationship exists between the parties, it is not necessary that all seven factors be present. *Nowicki v. Cannon Steel Erection Co.,* 711 N.E.2d 536, 540 (Ind.Ct.App.1999), *trans. denied.* Instead, if a majority of the factors is present, an employer-employee relationship exists. *Id.*

Here, there is no evidence that as of May 3, 1996, ESI had either exercised or had the right to exercise any control over the manner in which the Employees performed their work. The undisputed evidence shows that ESI clerical staff issued payroll checks from offices located in Angola, Indiana, and Coldwater, Michigan, several hundred miles from the CSX headquarters in Minneapolis, Minnesota. CSX would fax or mail to ESI a listing of the gross wages to be paid each individual, and ESI would issue checks after calculating the appropriate deductions. It would overnight the checks to CSX which would distribute them to their employees. ESI would then invoice CSX for reimbursement. That was the extent of ESI's involvement with the Employees.

---

**2.** The Employees direct us to several W–2 forms prepared by ESI which show ESI as the employer. We decline to hold that a W–2 form is sufficient to create a genuine issue of material fact absent any evidence of mutual intent and where, as here, the evidence is undisputed that ESI did not pay the Employees' wages.

There is no evidence that ESI scheduled, directed or supervised the Employees in any manner. Nor is there any evidence that ESI created or maintained original business records. Instead, ESI merely processed payroll data submitted by CSX. In sum, the Employees failed to present any evidence that ESI was anything more than a payroll agent and conduit for money supplied by CSX.

## CONCLUSION

There is no evidence of mutual assent to an employment relationship between ESI and the Employees. There is no evidence that ESI and the Employees had agreed on the terms of employment or that ESI either controlled or had the right to control the conduct of the Employees. The evidence shows only that ESI was CSX's payroll agent. On these undisputed material facts, we hold as a matter of law that there was no employment relationship between ESI and the Employees and, hence, no factual basis to support the Employees' statutory wage claim.[3]

The trial court entered summary judgment in favor of ESI, dismissing the Employees' claim on jurisdictional grounds. We affirm the entry of summary judgment but remand with instructions that judgment be entered for ESI and against the Employees on the issue of liability.

Affirmed and remanded with instructions.

RILEY, J., concurs.

STATON, J., concurs with separate opinion.

STATON, J., concurring

I concur. However, I write separately to emphasize that only the unique circumstances of this case cause me to agree that the plaintiffs were not employees of ESI, and as such, that the plaintiffs may not collect unpaid wages, along with statutory damages and attorney's fees, from ESI.

"A person may be the employee of two employers, not joint employers, at one time as to one act, if the service to one does not involve abandonment of service to the other." *Mannon v. Howmet Transport Service, Inc.*, 641 N.E.2d 70, 73 (Ind. Ct.App.1994), *reh. denied.* In cases involving leased employees, employees will often have sufficient connection with both the lessor and the lessee to be considered employees of both. Here, however, the plaintiff employees had very little connection to ESI. The only evidence indicating that the plaintiffs had any knowledge of ESI prior to CSX going out of business was the fact that ESI's name appeared on their payroll checks for several weeks prior to May 3, 1996. This is simply not enough to create an employer-employee relationship between ESI and the plaintiffs.

The fact that ESI was not the plaintiffs' employer does not mean that it had no responsibility to the employees of CSX. That responsibility, however, was of a moral nature, not a legal one.

---

3. The parties argue extensively in their briefs whether adjudication of the Employees' state law wage claims is preempted by federal law because of the existence of a collective bargaining agreement. It is well-settled that the interpretation of a collective bargaining agreement is a matter of federal law. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). However, because we conclude that ESI was not an employer of the Employees, we need not reach the preemption issue in this case. We save for another day the question of whether, and if so, under what circumstances, a statutory wage claim can be maintained independent of a collective bargaining agreement.