TRI-QUALITY ENTERPRISES, INC., d/b/a RHINO LININGS OF FORT WAYNE, Appellant-Third-Party Plaintiff,
v.
TOTAL SYSTEMS TECHNOLOGY, INC., Appellee-Third-Party Defendant.
No. 02A03-0712-CV-593
Court of Appeals of Indiana.
September 3, 2008
G. MARTIN COLE, JEREMY J. GROGG, Burt, Blee, Dixon, Sutton & Bloom, LLP, Fort Wayne, Indiana, Attorneys for Appellant.
JAMES P. FENTON, Eilbacher Fletcher, LLP, Fort Wayne, Indiana, Attorney for Appellee.

MEMORANDUM DECISION
ROBB, Judge

Case Summary and Issues
Tri-Quality Enterprises, Inc. d/b/a Rhino Linings of Fort Wayne ("Rhino Linings") appeals the trial court's grant of summary judgment in favor of Total Systems Technology, Inc. ("TST"), and its shareholders, Charles Piscatelli and Dorothy Piscatelli, on Rhino Linings' third-party claims of breach of contract, common law indemnity, and fraud, as well as the trial court's denial of Rhino Linings' motion for summary judgment on its breach of contract claim. On appeal, Rhino Linings raises five issues, which we consolidate and restate as whether the trial court properly granted TST summary judgment on Rhino Linings' claims of breach of contract, common law indemnity, and fraud. Concluding that the trial court properly granted TST summary judgment on the breach of contract claim, but not the common law indemnity and fraud claims, we affirm in part, reverse in part, and remand.

Facts and Procedural History
This litigation arose when TST, a manufacturer of automotive protective products, was judicially determined to have breached a non-compete agreement with its former distributor in the Fort Wayne area, 14/69 Car Wash Super Center, Inc. ("14/69"). On June 9, 1999, TST and 14/69's predecessor entered into an Asset Purchase Agreement[1] and a Master Distributorship Agreement. 14/69 subsequently succeeded to these agreements. The Asset Purchase Agreement contained a non-compete clause stating that TST would not sell its products in the Fort Wayne area[2] directly or through a distributor for a period of eight years, and the Master Distributorship Agreement gave 14/69 a renewal option after the initial two-year period. 14/69 declined the renewal option and ceased distributing TST products on June 9, 2001. Left without a distributor for the Fort Wayne area, on June 21, 2001, TST entered into an agreement (the "Agreement") with Rhino Linings that gave Rhino Linings the exclusive right to sell TST products in nine counties, including Allen county.
On December 19, 2001, after having received word of the Agreement through several media reports, 14/69 filed a complaint in Allen superior court against TST and Rhino Linings that included a claim of breach of the non-compete clause. The litigation was removed to federal district court based on the existence of federal claims and, on April 28, 2004, the district court entered an order finding that the non-compete clause was enforceable notwithstanding 14/69's decision not to renew the Master Distributorship Agreement and that TST had breached the non-compete clause by entering into the Agreement with Rhino Linings. Based on these findings, the district court concluded 14/69 was entitled to injunctive relief pursuant to the terms of the non-compete clause. The district court disposed of the federal claims over the next several months and transferred the remaining state law claims back to Allen superior court on September 29, 2004.
The practical effect of the district court's April 28, 2004, order was that TST could no longer perform its obligations under the Agreement. As a result, on July 13, 2004, Rhino Linings filed a third-party complaint, which it amended on October 4, 2004, against TST and the Piscatellis. The amended third-party complaint alleged breach of contract against TST, breach of warranty against TST, fraud against TST and Charles, and also sought common law indemnification from TST and to impose personal liability on Charles and Dorothy based on the alleged fraud.[3] On November 17, 2006, Rhino Linings filed a motion for summary judgment on its breach of contract claim, and TST and the Piscatellis filed a motion for summary judgment on all of Rhino Linings' claims. On May 15, 2007, following a hearing on the motions, the trial court entered an order granting TST and the Piscatellis' motion and denying Rhino Linings'. On June 14, 2007, Rhino Linings filed a motion to correct error, which the trial court denied on July 30, 2007. On October 11, 2007, after the trial court entered judgment in favor of TST on a counterclaim not relevant to this appeal, Rhino Linings renewed its motion to correct error, which the trial court again denied. Rhino Linings now appeals.

Discussion and Decision

I. Standard of Review
Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We apply the same standard of review as the trial court did in reviewing the grant or denial of a motion for summary judgment. Black v. Employee Solutions, Inc., 725 N.E.2d 138, 141 (Ind. Ct. App. 2000). That is, "[t]he party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." Ryan v. Brown, 827 N.E.2d 112, 117 (Ind. Ct. App. 2005). If the moving party meets these two requirements, then the burden shifts to the non-moving party to show the existence of a genuine issue of material fact by setting forth specifically designated facts. Id. "We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party." Id. We may affirm the trial court's grant of summary judgment on any basis argued by the parties and supported by the record. Breining v. Harkness, 872 N.E.2d 155, 158 (Ind. Ct. App. 2007), trans. denied. "The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." Ind. Farmers Mut. Ins. Group v. Blaskie, 727 N.E.2d 13, 15 (Ind. Ct. App. 2000). Moreover, in cases such as this one where the trial court enters findings of fact and conclusions of law, the entry of such findings and conclusions does not alter our standard of review, as we are not bound by them. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). Instead, the findings and conclusions merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

II. Breach of Contract
Rhino Linings argues the trial court improperly granted TST summary judgment (and improperly denied Rhino Linings summary judgment) because it improperly interpreted the Agreement as excusing TST's failure to perform. Before addressing this argument, we note the Agreement states that it "shall be construed in accordance with the laws of the Commonwealth of Pennsylvania. . . ." Appellant's App. at 278. Because "parties may generally choose the law that will govern their agreements," Brickner v. Brickner, 723 N.E.2d 468, 471 (Ind. Ct. App. 2000), trans. denied, we will interpret the Agreement according to principles of Pennsylvania law.
Under Pennsylvania law, "the fundamental rule in construing a contract is to ascertain and give effect to the intent of the contracting parties." Crawford Cent. Sch. Dist. v. Commonwealth, 888 A.2d 616, 623 (Pa. 2005). The intent of the parties is determined by examining the writing itself. Mace v. Atl. Ref. Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). Because "[c]ourts do not assume a contract's language was chosen carelessly, nor do they assume the parties were ignorant of the meaning of the language employed," Crawford Cent. Sch. Dist., 888 A.2d at 623, "no part of a contract should be disregarded or treated as a nullity or a redundancy," Moran v. Bair, 156 A.2d 81, 82 (1931). "When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone." Id. If, however, the contract is susceptible to different interpretations, both of which are reasonable, parole evidence may be considered to determine the parties' intent. Murphy v. Duquesne Univ. of The Holy Ghost, 777 A.2d 418, 429-30 (Pa. 2001).
The propriety of the trial court's decision turns on whether the following paragraph in the Agreement excuses TST's failure to perform:
11. Force Majeure.[4] Neither party hereto shall be responsible for any failure of performance of this Agreement if prevented from doing so by acts of God, floods, fires, explosions, storms, transportation difficulties, strikes, lockouts, or other industrial disturbances, wars, inability to obtain necessary raw materials, or any law, rule or action, of any court of instrumentality [sic] of the federal, state or local governments or any other cause or causes beyond their [sic] reasonable control whether similar or dissimilar to those stated above.
Appellant's App. at 278. The parties agree that the district court's decision to enforce the non-compete clause against TST constituted an "action" by a federal court within the meaning of the Agreement, but disagree whether such an action must be one that is beyond TST's "reasonable control" so as to excuse its failure to perform. In this respect, Rhino Linings interprets the term "beyond their reasonable control" as applying to the residual, or "catch-all," provision (i.e. "any other cause or causes beyond their [sic] reasonable control whether similar or dissimilar to those stated above"), as well as to each enumerated cause preceding the residual provision (e.g. floods, fires, explosions, and so on). Based on this interpretation, Rhino Linings argues the district court's action was not beyond TST's reasonable control because it either knew or should have known that it was breaching the non-compete clause when it entered into the Agreement. TST counters by interpreting the term "beyond their reasonable control" as modifying the residual provision only. As such, TST argues that any federal court action excuses its performance regardless of whether such action was beyond its reasonable control. Thus, the question before us is whether the term "beyond their reasonable control" modifies the residual provision and each enumerated cause or whether it modifies the residual provision only.
We start our analysis by noting that Pennsylvania has adopted the "last antecedent rule" as a rule of construction. See Commonwealth v. Rosenbloom Fin. Corp., 325 A.2d 907, 909 (1974). Under the rule, qualifying words or terms should be applied to the words immediately preceding them and should not extend to include other words, phrases, or clauses more remote, unless such extension or inclusion is clearly required by intent or meaning or by the context of the writing as a whole. John Hancock Prop. & Cas. Ins. Co. v. Commonwealth, 554 A.2d 618, 622 (Pa. Commw. Ct. 1989). As the definition indicates, the rule is not a rigid one, but rather a default to apply where no contrary intent has been shown. See Rosenbloom Fin. Corp., 325 A.2d at 909 ("The rule is but another aid to discovery of intent or meaning, however, and not an inflexible and uniformly binding rule."). Nevertheless, two independent reasons convince us that we should not depart from this default rule.
First, a comparison of the structure of the enumerated causes and the residual provision indicates the parties intended the term "beyond their reasonable control" to modify the latter only. In this respect, we note that some of the enumerated causes are not always beyond a party's reasonable control. Certainly acts of God, storms, and wars are always beyond a party's reasonable control, but other causes might be self-inflicted  a party, for example, might experience "transportation difficulties" because it decided to retool its vehicle fleet, or it might experience an "inability to obtain raw materials" because it overextended its credit. In contrast to these enumerated causes, which, by their plain meaning, may be accurately described as causes that are sometimes within a party's reasonable control and sometimes not, the residual provision leaves no room for error: it applies to "any other cause or causes beyond their reasonable control whether similar or dissimilar to" the enumerated causes. Appellant's App. at 278. The contrast between these enumerated causes and the residual provision indicates the parties knew how to specify when they wanted to limit a cause to the "reasonable control" requirement and when they did not. That they declined to do so with respect to the enumerated causes convinces us the enumerated causes are not bound as such.
Second, and perhaps more significant, we note that accepting Rhino Linings' interpretation would create a redundancy. As mentioned above, enumerated causes such as acts of God, storms, and wars are, by definition, always beyond a party's reasonable control. Pennsylvania's principles of statutory construction do not permit a reviewing court to assume the parties chose their words carelessly or that they were ignorant of the language employed, Crawford Cent. Sch. Dist., 888 A.2d at 623, or to interpret a contract in a manner that creates a redundancy, Moran, 156 A.2d at 82. With respect to this latter point, to conclude that the term "beyond their reasonable control" modified each enumerated cause would be tantamount to interpreting the term "acts of God" as "acts of God beyond their reasonable control"  an obvious redundancy. Thus, for these reasons, we decline to depart from the last antecedent rule and conclude that the term "beyond their reasonable control" modifies the residual provision only.
Notwithstanding this conclusion, Rhino Linings makes three somewhat related arguments that the trial court still improperly interpreted the Agreement as excusing TST's failure to perform. Rhino Linings' first argument relies on section 458 of the Restatement of Contracts, which excuses a party's failure to perform if such failure is due to a court order and the party's conduct did not contribute to the order, in this case the district court's injunction against TST. Pennsylvania recognizes this rule, see In re Craven's Estate, 82 A.2d 60, 62-63 (1951), but Rhino Linings overlooks that it applies only "in the absence of circumstances showing a contrary intention. . . .," id. at 62 (citing Restatement of Contracts § 458). As we have already concluded, the contrary intention here is that the Agreement excuses a party's failure to perform if such failure is due to a federal court's action, regardless of whether such action was beyond the party's reasonable control. Stated differently, section 458 represents the common law rule that generally excuses a party's failure to perform where such failure is due to an unforeseeable event. This rule, however, must yield where the parties' intent indicates they have contracted otherwise.
Rhino Linings' second and third arguments fail for the same reason. Rhino Linings' second argument is that a party cannot use a court-ordered injunction to defend a breach of contract claim where the injunction is the party's own fault, and cites Commonwealth v. Middletown Elec. Rwy. Co., 1899 WL 3850 (Pa. Com. Pl. 1900), to support this argument. However, nothing in the Middletown opinion indicates that parties cannot contract around the common law rule. In this respect, Rhino Linings' third argument is closer to the point. Relying on Martin v. Dept. of Envtl. Res., 548 A.2d 675 (Pa. Commw. Ct. 1988), Rhino Linings contends that Pennsylvania law imports into every contact an implicit clause requiring that a force majeure is an excuse to a party's failure to perform only if the force majeure is beyond the party's control. Although the Martin opinion explicitly states this proposition, id. at 678 ("In order to use a force majeure clause as an excuse for non-performance, the event alleged as an excuse must have been beyond the party's control and not due to any fault or negligence by the non-performing party."), it cites to no authority indicating this is the law in Pennsylvania. Instead, in the following sentence, the opinion cites Gulf Oil Corp. v. Fed. Energy Regulatory Comm'n, 706 F.2d 444 (3d Cir. 1983), cert denied, 464 U.S. 1038 (1984), for the proposition that "the non-performing party has the burden of proof as well as a duty to show what action was taken to perform the contract, regardless of the occurrence of the excuse." Id. To the extent the Martin opinion relied on Gulf Oil Corp. as support for the proposition that Pennsylvania law implies a "reasonable control" requirement into every contract, we note that the latter opinion did not involve contract interpretation under Pennsylvania law; the court in Gulf Oil Corp. appears instead to have applied principles of federal law. See id. at 451 (noting that the standard of review is derived from the Natural Gas Act of 1938 (citing 15 U.S.C. § 717r (1970)). Pennsylvania's principles of construction provide that the intent of the parties is determined by examining the writing itself. Mace v. Atl. Ref. Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). A rule that writes an implied provision into every contract would undermine this rule, and absent a statute or further explanation from one of Pennsylvania's appellate courts, we are not convinced that the proposition stated in Martin is the law in that state. Accordingly, we reject Rhino Linings' argument that Pennsylvania law interprets every contractual force majeure provision as containing a "reasonable control" requirement.
The language of paragraph 11 of the Agreement, coupled with the last antecedent rule, convinces us that the parties intended the term "beyond their reasonable control" to modify the residual provision only. Because Rhino Linings does not dispute that the district court's decision to enforce the non-compete clause against TST constituted an "action" by a federal court, it follows that TST's failure to perform was excused as a matter of law. Accordingly, the trial court properly granted TST summary judgment (and denied Rhino Linings summary judgment) on Rhino Linings' breach of contract claim.[5]

III. Common Law Indemnity
Rhino Linings argues the trial court improperly granted TST summary judgment on Rhino Linings' common law indemnity claim. The trial court concluded that because TST had not breached the Agreement, it necessarily followed that Rhino Linings had no claim for indemnification. See Appellant's App. at 33 ("As a result of the Court's entry of judgment for TST on Count I [(Rhino Linings' breach of contract claim)], judgment is entered for TST and against Rhino Linings on Count II of Rhino Linings' Amended Third-Party Complaint, its claim for common law indemnity."). However, as Rhino Linings points out, the trial court's conclusion overlooks that "Indiana adheres to the general rule that in the absence of an express contractual or statutory right to indemnity, a party may bring an action for indemnification only if he is without fault." Mullen v. Cogdell, 643 N.E.2d 390, 400 (Ind. Ct. App. 1994), trans. denied. Rhino Linings argues it is entitled to attorney fees it incurred in defending the action brought by 14/69, as well as attorney fees it incurred in bringing the instant indemnification claim against TST, because Rhino Linings "found itself defending various claims brought by 14/69 solely by reason that TST solicited Rhino Linings to act as its distributor within the Fort Wayne area . . . without disclosing to Rhino Linings the existence of the Non-Compete." Appellant's Brief at 28.
Although a party is entitled to recover legal expenses, including attorney fees, incurred in defending an action for which it is entitled to indemnification pursuant to a contract, see Zebrowski and Assocs., Inc. v. City of Indianapolis, 457 N.E.2d 259, 264 (Ind. Ct. App. 1983), our research has not revealed any case indicating a party may recover attorney fees as its sole remedy under a common law indemnity claim. Indeed, several statements from Indiana appellate courts indicate that in addition to the absence of fault requirement, recovery must be predicated on the party having paid the underlying claim. See, e.g., Indianapolis Power & Light Co. v. Brad Snodgrass, Inc., 578 N.E.2d 669, 671 (Ind. 1991) ("The right to indemnity may be implied at common law only in favor of one whose liability to a third person is solely derivative or constructive, and only as against one who has by his wrongful act caused such derivative or constructive liability to be imposed upon the indemnitee."); INS Investigations Bureau, Inc. v. Lee, 784 N.E.2d 566, 576 (Ind. Ct. App. 2003) ("[O]bligation to indemnify does not arise until the party seeking indemnity suffers loss or incurs damages. This may occur when the party seeking indemnity 1) pays the underlying claim; 2) pays judgment on the underlying claim; or 3) tenders payment in settlement of the underlying claim." (quoting Essex Group, Inc. v. Nill, 594 N.E.2d 503, 507 (Ind. Ct. App. 1992))), trans. denied.
The absence of authority indicating a party may recover attorney fees as its sole remedy under a common law indemnity claim is also reflected by the general rule in Indiana that prohibits a party from receiving reimbursement for its attorney fees unless a statute, agreement, or rule states otherwise. See Ind. Glass Co. v. Ind. Mich. Power Co., 692 N.E.2d 886, 887 (Ind. Ct. App. 1998). As Rhino Linings points out, however, one such rule stating otherwise is the third-party litigation exception, which permits a party to recover attorney fees incurred in litigation with a third party if the following elements are met: "(1) the plaintiff became involved in a legal dispute because of the defendant's breach of contract or other wrongful act; (2) the litigation was with a third party and not the defendant; and (3) the fees were incurred in that third-party litigation." Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins. Co., 837 N.E.2d 1032, 1039 (Ind. Ct. App. 2005). Under this test, Rhino Linings is precluded from recovering attorney fees incurred in pursuing its indemnification claim against TST, see id. at 1039-40 ("The test of recoverability of attorney fees is not whether they were incurred in a separate action, but whether they were incurred in an action against a third party."), but as to attorney fees Rhino Linings incurred in defending claims brought by 14/69, TST has not designated any evidence indicating that, as a matter of law, Rhino Linings cannot establish one or more of these elements. As such, genuine issues of material fact exist as to whether Rhino Linings is entitled to attorney fees incurred in defending claims brought by 14/69, and the trial court therefore improperly granted TST summary judgment on Rhino Linings' common law indemnity claim.

IV. Fraud
Rhino Linings argues the trial court improperly granted TST summary judgment on Rhino Linings' fraud claim. Rhino Linings' amended third-party complaint, though purporting to allege a single count of fraud, actually alleges a claim of actual fraud against TST and Charles based on TST's false representations during negotiations "that it had the unimpeded ability to enter into and perform the . . . Agreement with Rhino Linings, that TST's products could be distributed in the territory set forth in the . . . Agreement, and [that it] estimated sales of the TST distributorship in Fort Wayne to be at or around $250,000.00," appellant's app. at 159, and a claim of constructive fraud against TST and Charles based on TST's failure to disclose the non-compete clause. Applying Pennsylvania law and relying on an integration clause in the Agreement, the trial court concluded the parol evidence rule barred the admission of extrinsic evidence to prove either claim.
Before addressing the propriety of the trial court's decision, we note the parties disagree over whether Pennsylvania law or Indiana law applies to these claims. The trial court concluded Pennsylvania law applied because resolution of the fraud claims required interpretation of the Agreement, specifically the integration clause, and, as mentioned above, the Agreement contained a clause stating that it "shall be construed in accordance with the laws of the Commonwealth of Pennsylvania. . . ." Id. at 278. Interpretation of the Agreement, however, pertains to TST's defense that the parol evidence rule bars Rhino Linings from introducing extrinsic evidence to support its claim, and Indiana choice-of-law analysis requires a court to first look to the nature of the claim, not the defense, to determine the applicable law. See Simon v. United States, 805 N.E.2d 798, 801 (Ind. 2004) (explaining that Indiana courts may not engage in dépeage, which "is the process of analyzing different issues within the same case separately under the laws of different states," but Indiana courts may apply separate substantive law to a tort claim and a contract claim even though such claims are part of the same litigation).
In this respect, we note that fraud, whether actual or constructive, is an action that sounds in tort, see Clark v. Millikin Mortg. Co., 495 N.E.2d 544, 547 (Ind. Ct. App. 1986), and Indiana choice-of-law analysis presumes the rule of lex loci delicti in such actions, Allen v. Great Amer. Reserve Ins. Co., 766 N.E.2d 1157, 1164 (Ind. 2002). The rule of lex loci delicti provides that a court applies the substantive law of the state where the tort was "committed." Hubbard Mfg. Co., Inc. v. Greeson, 515 N.E.2d 1071, 1073 (Ind. 1987). "The tort is said to have been committed in the state where the last event necessary to make an actor liable for the alleged wrong takes place." Id. Here, the parties do not dispute that the last event necessary for liability, in this case financial injury to Rhino Linings, occurred in Indiana. As such, and because TST has not presented any evidence or argument to rebut the presumption of lex loci delicti, we will apply Indiana substantive law to Rhino Linings' claims of actual and constructive fraud.
As mentioned above, the trial court granted TST summary judgment based on its conclusion that because the Agreement contains an integration clause, the parol evidence rule applies to bar Rhino Linings from introducing extrinsic evidence as to any representations TST may have made. However, Indiana law provides that although an integration clause generally results in application of the parol evidence rule, an exception exists where the parol evidence "is not being offered to vary the terms of the written contract, and to show that fraud, intentional misrepresentation, or mistake entered into the formation of a contract." America's Directories, Inc. v. Stellhorn One Hour Photo, Inc., 833 N.E.2d 1059, 1066 (Ind. Ct. App. 2005), trans. denied; see also Circle Centre Dev. Co. v. Y/G Ind., L.P., 762 N.E.2d 176, 179 (Ind. Ct. App. 2002) ("An exception to the parol evidence rule applies, however, in the case of fraud in the inducement, where a party was `induced' through fraudulent representations to enter a contract."), trans. denied. Fraud in the inducement is exactly what Rhino Linings alleges in its amended third-party complaint. See Appellant's App. at 160 (alleging that Rhino Linings relied on the misrepresentations when it entered into the Agreement). Thus, the parole evidence rule does not apply to prevent Rhino Linings from introducing extrinsic evidence on its fraud claim,[6] and it follows that the trial court improperly granted TST summary judgment on such grounds.[7]

Conclusion
The trial court properly granted TST summary judgment on Rhino Linings' breach of contract claim, but improperly granted TST summary judgment on Rhino Linings' common law indemnity and fraud claims.
Affirmed in part, reversed in part, and remanded.
RILEY, J., concurs.
BAKER, C.J., concurs in part and dissents in part with separate opinion.
BAKER, Chief Judge, dissenting in part.
I respectfully dissent from the majority's conclusion regarding the Agreement's force majeure clause. I believe that the only logical way to interpret this clause is to conclude that the final phrase thereof"any other cause or causes beyond their [sic] reasonable control" necessarily implies that the previously enunciated causes must also have been beyond the party's reasonable control to invoke the application of the clause. To interpret it as the majority has done leads to precisely the untenable result reached hereinrewarding the illicit behavior of a contracting party. TST knew or should have known that it was breaching the non-compete clause when it entered into the Agreement; thus, it should not be immune from Rhino Linings's claim for breach of contract. I do not believe that the parties intended this to be the result of the Agreement. Consequently, I would reverse the trial court's grant of summary judgment to TST on Rhino Linings's breach of contract claim. In all other respects, I concur with the majority opinion.
NOTES
[1] Charles and another entity owned in part by Charles were also parties to the Asset Purchase Agreement, but their status as parties to the Asset Purchase Agreement is not relevant to this appeal.
[2] Specifically, the Asset Purchase Agreement stated that the non-compete clause was enforceable within a thirty-five mile radius of the Allen county courthouse.
[3] Rhino Linings subsequently disavowed any claims against Dorothy, and the trial court dismissed them with prejudice.
[4] "Force majeure" is the French term for "a superior force." Black's Law Dictionary 673 (8th ed. 2004). Courts have described so-called "force majeure" clauses in contracts in various ways. See, e.g., Phillips Puerto Rico Core, Inc. v. Tradax Petrouleum, 782 F.2d 314, 319 (2d Cir. 1985) ("[T]he basic purpose of force majeure clauses . . . is . . . to relieve a party from its contractual duties when its performance has been prevented by a force beyond its control or when the purpose of the contract has been frustrated."); Kaplan v. Cablevision of PA, Inc., 671 A.2d 716, 721 n. 3 (Pa. Super. Ct. 1996) ("A force majeure clause lists a series of events such as earthquakes, storms, floods, natural disasters, wars, or other `acts of God' which the parties to a contract have agreed upon as excuses for nonperformance."). However, whatever interpretation is generally ascribed to a force majeure clause plays no part in our interpretation of the Agreement, as the Agreement goes on to state, "The headings preceding the text of the paragraphs hereof are inserted solely for the convenience of reference and shall not constitute a part of this Agreement nor shall they affect its meaning or effect." Appellant's Appendix at 278.
[5] The Dissent would conclude that the term "beyond their reasonable control" "necessarily implies that the previously enunciated causes must also have been beyond the party's reasonable control to invoke the application of the clause." Dissent, slip op. at 19. The Dissent apparently gives two reasons to support this conclusion: 1) that a contrary interpretation "leads to precisely the untenable result reached herein  rewarding the illicit behavior of a contracting party," and 2) "that the parties did not intend [the majority's interpretation] to be the result of the Agreement." Id. Regarding the Dissent's first reason, we assume "illicit behavior" refers to the Dissent's view that "TST knew or should have known that it was breaching the non-compete clause when it entered into the Agreement." Id. However, whether TST knew or should have known it was breaching the non-compete clause when it entered into the Agreement does not supply an answer to whether the term "beyond their reasonable control" modifies each of the enumerated causes or the residual cause only. The Dissent's second reason overlooks that the parties agreed Pennsylvania law would govern interpretation of the Agreement. The law in that state instructs us to apply the last antecedent rule unless a contrary intent by the parties has been shown, and we believe no contrary intent has been shown.
[6] We note the arguments and designated evidence that were presented to the trial court on Rhino Linings' fraud claim focused exclusively on issues of choice-of-law and the parole evidence rule and therefore the parties did not address if there were genuine issues of material fact regarding whether Rhino Linings could establish the elements of actual fraud and constructive fraud. This court has often stated that we may affirm a trial court's grant of summary judgment on any basis supported by the record, see, e.g., Hoesman v. Sheffler, 886 N.E.2d 622, 626 (Ind. Ct. App. 2008); Goodrich v. Ind. Mich. Power Co, 783 N.E.2d 793, 795 (Ind. Ct. App. 2003), trans. denied, but that observation has often been supplemented with the requirement that the parties also bring such a basis to this court's attention, see Breining, 872 N.E.2d at 158. At least under the circumstances of this case, we prefer the latter rule, and therefore will not attempt to affirm the trial court's decision on a basis not argued by the parties. Our decision today, however, does not prohibit TST from moving for summary judgment on the grounds that Rhino Linings cannot establish the elements of actual fraud or constructive fraud as a matter of law.
[7] The trial court also purported to grant TST summary judgment on the issue of whether Rhino Linings' could impose personal liability on Charles. However, because Charles's alleged personal liability is based on Rhino Linings' fraud claim, it follows that the trial court improperly granted TST summary judgment on this issue as well.